105 N.J. Super. 348 (1969)
252 A.2d 224
RAYMOND F. MALE, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, PLAINTIFF,
v.
POMPTON LAKES BOROUGH MUNICIPAL UTILITIES AUTHORITY AND MAPLE CONTRACTORS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 18, 1969.
*352 Mr. Andrew A. Valeriani, Jr., Deputy Attorney General, for plaintiff (Mr. Arthur J. Sills, Attorney General of the State of New Jersey).
Mr. William F. Johnson for defendant Pompton Lakes Borough Municipal Utilities Authority (Mr. William F. Johnson, Jr. on the brief).
Mr. William B. Kaufman for defendant Maple Contractors, Inc. (Messrs. Kaufman & Kaufman, attorneys).
*353 Mr. Thomas E. Durkin, Jr. submitted a brief on behalf of Local 825, International Union of Operating Engineers, AFL-CIO, amicus curiae.
MINTZ, J.S.C.
This is an action brought under the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. (Wage Act) by the Commissioner of Labor and Industry of New Jersey as trustee for aggrieved employees on a public works project. The action is in two counts. The first count is against Maple Contractors, Inc., a corporation of New Jersey (Maple), for an order (1) compelling Maple to produce its books and records in accordance with the requirements of N.J.S.A. 34:11-56.31; (2) imposing the statutory penalty of $500 under N.J.S.A. 34:11-56.35 for Maple's alleged willful refusal to furnish its payroll records, and (3) directing Maple to remit to plaintiff as trustee an amount of money representing the difference between the amounts actually paid to the workmen on the public works project and compensation that should have been paid under the Wage Act.
The second count is against Pompton Lakes Borough Municipal Authority (Authority) for its failure to include the prevailing wage rates in its contract with Maple, as required by N.J.S.A. 34:11-56.28. Under that section of the Wage Act the Authority has the responsibility to specify in its agreement with the contractor the prevailing wage rate in the locality for each craft or trade or classification of all workmen involved in the project.
"`Prevailing wage' means the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done." N.J.S.A. 34:11-56.26(9).
The Authority's failure to specify the prevailing wage rate allegedly constitutes a violation of a mandatory requirement of the Wage Act and renders it jointly and severally liable *354 with Maple for the wage deficiencies. Maple cross-claims against the Authority for indemnification.
Pursuant to the Municipal Utilities Authorities Law, N.J.S.A. 40:14B-1 et seq., the Borough of Pompton Lakes created a municipal utilities authority by ordinance adopted by its municipal council on October 7, 1964. Thereupon the Authority undertook to complete the construction of Stage I of a sanitary sewer system for which the borough had let several contracts in 1963. In 1965 the Authority sought bids on Stage II of the program, but in submitting its contract specifications failed to include the prevailing wage schedule. Maple was the successful bidder, and on June 11, 1965 it executed a contract with the Authority in connection with certain construction for Stage II of the system.
While the job was in progress the Wage and Hour Bureau of the New Jersey Department of Labor and Industry endeavored to inspect the payroll records of Maple but without success. The contract has been completed and the employees of Maple, through the Commissioner of Labor and Industry, have instituted the present action.
When the contract was executed, N.J.S.A. 34:11-56.26 (4) defined a "public body" which would be subject to the provisions of the Wage Act as follows:
"`Public body' means the State of New Jersey, any of its political subdivisions, except municipalities having a population of less than 45,000, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions." (Emphasis supplied)
(Subsequent to the execution of the contract in question, the statute was amended (L. 1966, c. 118, § 1) so as to except municipalities having a population of less than 25,000.) The Borough of Pompton Lakes has a population of about 12,000. The critical question is whether defendant Authority, created by a municipality which is clearly excepted from the mandate of the statute, is likewise excepted.
*355 In Parking Authority of Trenton v. Trenton, 40 N.J. 251 (1963), the parking authority contended that as a political subdivision of the State and as agency and instrumentality of the city, it was exempt from paying the municipal building permit fee. The court, finding no express or implied provision in the Parking Authority Law (N.J.S.A. 40:11A-1 et seq.) exempting a parking authority from the city's building code requirements, stated that had the Legislature intended to exempt an authority from municipal building regulations requiring the payment of a fee for a building permit, a provision to that effect could readily have been included in the law. The absence of such a provision leads to the conclusion that the Legislature intended no such exemption to exist. The same view is expressed in Wall v. Hudson County Park Commission, 80 N.J. Super. 372 (App. Div. 1963) where the question arose as to whether a county park commission was exempt from liability for personal injuries resulting from use of public grounds for the reason that it was the agency of the county which was exempt. The court held that the exemption afforded by the statute in question did not extend to the activities of the county park commission. Had the Legislature intended such an exemption, it would have clearly so stated. So in the case at bar, it may be argued that had the Legislature intended to except the Authority from the provisions of the Wage Act, it would have so provided.
Our Wage Act is remedial in nature. N.J.S.A. 34:11-56.25 expressly provides that:
"It is declared to be the public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being."
The purpose of the Wage Act is to encompass all public works projects other than those specifically excepted. Any *356 exemption from humanitarian and remedial legislation is to be narrowly construed. To extend an exemption beyond those plainly and unmistakably within its term is to abuse the interpretative process and to frustrate the announced will of the people. A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).
Kohler v. Cobb, 31 N.J. 369 (1960) relied upon by defendants, recognizes that a close relationship exists between the municipality and the sewerage authority. This leads to a clear conclusion that a member of a municipality created sewerage authority holds an office "in" the creator municipality and must take the oath of office as officers of the municipality are required to do. See also Camden County v. Pennsauken Sewerage Authority, 15 N.J. 456 (1954) where the court characterized the sewerage authority, a separate and distinct governmental unit, as the alter ego of the municipality.
In the later cases of Jordan v. Zidel, 40 N.J. 244 (1963), Parking Authority of Trenton v. Trenton, supra, and Broadway National Bank of Bayonne v. Parking Authority of Bayonne, 40 N.J. 227 (1963), the authority was held to be not only an agency of the municipality but also an independent entity distinct and separate from the municipality. In the Broadway National Bank case the court, in construing the relationship between the parking authority and the municipality creating it, said:
"* * * Though a parking authority is an `agency and instrumentality' of the municipality creating it (N.J.S.A. 40:11A-4), and is engaged in a municipal function, it is nevertheless a `public body corporate and politic and a political subdivision of the State.' N.J.S.A. 40:11A-4, 6(1). Such authority is an independent entity distinct and separate from the municipality. * * * It has broad powers derived from its enabling legislation, including the power to issue its own bonds and incur other obligations, to deal with the problem of alleviating traffic congestion by providing off-street parking facilities within its own territorial boundaries, which are coterminous with those of the municipality. N.J.S.A. 40:11A-6, 8. Indeed, an authority has broader powers in some respects than the municipality which created it, e.g., it is not bound by Chapter 50 of Title 40, *357 which imposes restrictions upon the power of municipalities to enter into contracts. N.J.S.A. 40:11A-23 (4)." (at p. 233; citations omitted)
Significantly, the court in the three aforementioned cases recognized the distinction between the office and the officers of an authority, so that upon the effective date of a new plan of government under the Faulkner Act, N.J.S.A. 40:69A-1 et seq., the terms of office of commissioners of an authority come to an end but the offices constituting the authority are not abolished.
As already observed, N.J.S.A. 34:11-56.26(4) defines "public body" and excepts therefrom only municipalities having a population under 45,000 (now 25,000). Defendant Authority is a separate body politic and corporate and a political subdivision of the State, with broad independent powers to acquire property, issue bonds and fix rates for its services. Although it is also an agency of the municipality, engaged in discharging local governmental responsibilities for the welfare of the inhabitants of the community, it is subject to the provisions of the Wage Act.
Defendants urge that in any event the Wage Act in question is unconstitutional in that the classification therein provided is violative of Article I of the 1947 New Jersey Constitution and Amendments V and XIV of the United States Constitution. It is contended that there is no rational basis for distinguishing between municipalities on the basis of population. Furthermore, it is asserted that the statute as construed excepts municipalities under 45,000 but leaves the Authority created by such a municipality subject to the Wage Act. Thus, had the municipality entered into the contract with Maple, it would not have been required to specify the prevailing wage rate in the contract, yet the Authority created by that municipality is obliged to do so. Therefore, it is urged that such classification is arbitrary and unreasonable.
Initially, it is to be noted that an act of the Legislature is presumed to be constitutional, the burden of proving *358 the contrary being on that party asserting such legislation to be unconstitutional. David v. Vesta Co., 45 N.J. 301 (1965); Fried v. Kervick, 34 N.J. 68 (1961); Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). The authority to classify and exempt is within the Legislature; it is not an administrative or judicial function. Hotel Suburban System v. Holderman, 42 N.J. Super. 84, 94 (App. Div. 1956). The Legislature may proceed to meet a recognized evil on a step-by-step basis. That the legislative action did not go as far as it might does not invalidate the statute. Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 50, 51, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); David v. Vesta Co., supra. The Legislature has a large measure of discretion in selecting the means of accomplishing its goals, and discrimination of degree in the statute will be presumed to rest on a rational basis if there is any conceivable state of facts which could afford a reasonable ground therefor.
In determining the applicability of a statute, population may be a proper basis for classification. McCarthy v. Roberson, 123 N.J.L. 132 (Sup. Ct. 1939). In the instant situation the Legislature presumably deemed it appropriate to handle the problems on a step-by-step basis and to except from the Wage Act only municipalities under the prescribed population. Such classification is constitutional. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).
There is a substantial difference between a municipality and an authority created by the municipality. One of the primary reasons for the creation of a municipal authority is to permit the taxpayers to be relieved from the financial burden connected with the construction and operation of the public facility, and to have the authority bear all of the costs involved in order that they might be liquidated from the revenues received by the authority for the *359 use of the facility. Parking Authority of Trenton v. Trenton, supra.
The Wage Act makes no distinction between authorities created by municipalities. All authorities of every municipality, regardless of population, are subject to the Wage Act. N.J.S.A. 34:11-56.42 provides that:
"If any provision of this act, or the application thereof to any person or circumstance, is held invalid, the remainder of the act and the application thereof, to other persons or circumstances shall not be affected thereby."
Thus, even assuming arguendo, that the classification of municipalities based upon population is arbitrary and unreasonable, such determination could not affect the validity of the Wage Act insofar as it applies to a municipal authority.
N.J.S.A. 34:11-56.28 provides that:
"The public body awarding any contract for public work or otherwise undertaking any public work shall ascertain from the commissioner the prevailing wage rate in the locality in which the public work is to be performed for each craft or trade needed to perform the contract and shall specify in the contract itself what the prevailing wage rate in the locality is for each craft or trade or classification of all workmen needed to perform the contract during the anticipated term thereof. Nothing in this act however shall prohibit the payment of more than the prevailing wage rate to any workmen employed on a public work."
Defendant Maple argues that since the Authority failed to specify in the contract the prevailing wage rate, Maple is not liable under N.J.S.A. 34:11-56.40 in any action instituted by or in behalf of any workman for the recovery of wage deficiencies. In brief, Maple alleges that the specification of the prevailing wage rate in the contract is a condition precedent to the imposition of any liability on it under the Wage Act.
Significantly, the Wage Act affords no relief to the aggrieved workman against the public body. Hence, if Maple's argument is valid, the workmen are left without *360 relief. I will not attribute to the Legislature a purpose to legislate idly. The probable legislative intent should be given effect. Roman v. Sharper, 53 N.J. 338 (1969). As between the two possible constructions of the statute, the one should be adopted which effectuates rather than defeats the legislative purpose. State Department of Civil Service v. Clark, 15 N.J. 334 (1954). The probable intent of the Legislature is effectuated and the legislative purpose accomplished by holding the contractor, Maple, accountable to plaintiff for the wage deficiencies despite the fact that the prevailing wage rate was not specified in the contract. Moreover, this result is dictated by a provision in the contract. The "General Conditions" of the contract include (at page 39) the following paragraph:
"Each and every provision of law and clause required by law to be inserted in this contract shall be deemed to be inserted herein and the contract shall be read and enforced as though it were included herein, and if through mistake or otherwise any such provision is not inserted, then upon the application of either party the contract shall forthwith be physically amended to make such insertion."
While the Wage Act imposes on the Authority no statutory liability to plaintiff for failing to specify the prevailing wage rate in its contract, and none should be implied, I am of the view that Maple is entitled to be indemnified by the Authority for any liability to make payment to plaintiff of such wage deficiencies as may be determined upon an inspection of Maple's books and records.
The contract in question was the subject of public bidding. The proposed contract and specifications submitted to bidders did not contain the prevailing wage rate schedule. Anthony Nardone, president of Maple, testified that he looked for such schedule in the contract. Not having found any, he presumably concluded that the project was not subject to the Wage Act. Maple obviously bid for the job upon the assumption that it would not be required to pay the prevailing wage rate. It was lulled into this position by the failure of the Authority *361 to obey the statutory requirement that it specify in the contract itself the prevailing wage rate in the locality for the craft or trade of all workmen needed to perform the contract. N.J.S.A. 34:11-56.28. It also appears that a field representative of the New Jersey Department of Labor and Industry, Wage and Hour Bureau, talked with the chairman of the Authority on April 28, 1965, at which time he furnished him with certain forms. The Authority was thus alerted to the statutory requirements before the contract was executed but apparently concluded that it was not subject thereto.
As previously observed, the "General Conditions" in the contract provide that if through mistake or otherwise a provision required by law is not inserted, then upon application of either party the contract shall be forthwith amended to make such insertion. Neither the Authority nor Maple applied to amend the contract to include the prevailing wage rate. Maple was free of fault. It relied upon the contract documents submitted by the Authority. The liability imposed upon it to plaintiff is merely an imputed or constructive fault. The ultimate responsibility for the wage deficiencies rests upon the Authority. It failed to comply with the statutory mandate that it specify the prevailing wage rate in the contract. The provision in the "General Conditions" of the contract to which I have alluded will not absolve the Authority from its statutory duty. Had the Authority inserted the prevailing wage rate in the proposed contract submitted to bidders for the work, the contract price probably would have been higher. The Authority should not benefit from its failure to adhere to the statutory mandate. N.J.S.A. 34:11-56.28.
Under all the stated circumstances, Maple is entitled to be indemnified by the Authority against liability for any judgment that may be ultimately rendered against it. Cf. Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 79-81 (1960); Hut v. Antonio v. Guth, 95 N.J. Super. 62, 69 (Law Div. 1967); Public Service Electric & Gas Co. v. *362 Waldroup, 38 N.J. Super. 419 (App. Div. 1955). The amount of said judgment will be fixed at a hearing before the court after plaintiff has inspected Maple's books and records pursuant to N.J.S.A. 34:11-56.31.
Finally, plaintiff is not entitled in this proceeding to recover against Maple the statutory penalty of $500 for willful violation of the Wage Act as prescribed in N.J.S.A. 34:11-56.35. This section provides that any employer who violates any provision of the Wage Act "shall be guilty of a misdemeanor and shall, upon conviction therefor, be fined not less than $100.00 nor more than $500.00 or be imprisoned for not less than 10 nor more than 90 days, or by both such fine and imprisonment. * * *" The penalty imposed by this section is criminal in nature. Crimes are distinguishable from all other public offenses by the fact that indictment by a grand jury is a constitutional prerequisite to punishment therefor, as is trial by jury, unless waived by the defendant. Sawran v. Lennon, 19 N.J. 606 (1955); N.J. Const. 1947, Art. I, pars. 8, 9.