122 N.J. Super. 526 (1973)
301 A.2d 153
RAYMOND F. MALE, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
ERNEST RENDA CONTRACTING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND HILLSBOROUGH MUNICIPAL UTILITIES AUTHORITY, TOWNSHIP OF HILLSBOROUGH, COUNTY OF SOMERSET, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1972.
Decided February 21, 1973.
*528 Before Judges LABRECQUE, KOLOVSKY and MATTHEWS.
Ms. Virginia Long Annich, Deputy Attorney General, argued the cause for appellant (Mr. John P. Sheridan, Jr., Deputy Attorney General, on the brief; Mr. George F. Kugler, Attorney General of New Jersey, attorney).
*529 Mr. Raymond P. DeMarco argued the cause for defendant-respondent Ernest Renda Contracting Co., Inc. (Messrs. Romer & DeMarco, attorneys).
Mr. William P. Westling argued the cause for defendant-respondent, cross-appellant Township of Hillsborough Municipal Utilities Authority (Messrs. Imbriani and Westling, attorneys).
Mr. Thomas L. Parsonnet filed a brief on behalf of amicus curiae New Jersey State A.F.L.-C.I.O. (Messrs. Parsonnet, Parsonnet and Duggan, attorneys).
Mr. Anthony C. Meola filed a brief on behalf of amicus curiae New Jersey Building and Construction Trades Council, A.F.L.-C.I.O. (Messrs. Dunn and Pykon, attorneys).
Mr. Ronald L. Tobia filed a brief on behalf of amicus curiae Associated Independent Contractors.
Mr. Richard K. Rosenberg filed a brief on behalf of amicus curiae Utility Contractors Association of New Jersey, Inc. (Mr. Herbert R. Ezor on the brief; Messrs. Heller and Laiks, attorneys).
The opinion of the court was delivered by MATTHEWS, J.A.D.
The Commissioner of Labor and Industry (Commissioner) instituted this action under N.J.S.A. 34:11-56.25 et seq., the Prevailing Wage Act (act), in the interest of employees of defendant Ernest Renda Contracting Co., Inc. (Renda), who performed work on a public works project contracted for by defendant Municipal Utilities Authority of the Township of Hillsborough, Somerset County (Authority).
The complaint alleged that defendants failed to pay the prevailing wage to employees of Renda on the aforementioned public works project and otherwise failed to fulfill *530 the obligations under the act. The Commissioner sought judgment requiring defendants to pay to him, as trustee for the workmen involved, the difference between the amount actually paid to those workmen and the amount that should have been paid in compliance with the act. That amount was originally computed after preliminary audit at $3,288.64. Later, in August 1970, after the commencement of this action, the Commissioner caused an additional audit to be conducted which covered the entire period of the project which by then had been completed. The additional audit disclosed that the difference between the amount Renda's employees had actually been paid and the amount due under the prevailing wage schedule to be $57,685.16.
N.J.S.A. 34:11-56.25 et seq. was adopted in 1963. (L. 1963, c. 150). Section 1 of the act (N.J.S.A. 34:11-56.25) provides:
It is declared to be the public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being.
Under section 2 (N.J.S.A. 34:11-56.26) certain terms as used in the act are defined. These include subsection (4), "public body":
(4) "Public body" means the State of New Jersey, any of its political subdivisions, except municipalities having a population of less than 25,000, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions.
and subsection (9), "prevailing wage":
(9) "Prevailing wage" means the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done.
*531 Under section 3 (N.J.S.A. 34:11-56.27) it is stated that the act applies to every contract in excess of $2,000 for any public work and that every contract covering such work must contain a provision setting forth the prevailing wage to be paid as the same has been established by the Commissioner.
Section 6 of the Act (N.J.S.A. 34:11-56.30) sets forth the method in which the Commissioner is to establish the prevailing wage rate in any locality. "Locality" is defined in N.J.S.A. 34:11-56.26(2) as follows:
(2) "Locality" means any political subdivision of the State, combination of the same or parts thereof, or any geographical area or areas classified, designated and fixed by the commissioner from time to time, provided that in determining the "locality" the commissioner shall be guided by the boundary lines of political subdivisions or parts thereof, or by a consideration of the areas with respect to which it has been the practice of employers of particular crafts or trades to engage in collective bargaining with the representatives of workmen in such craft or trade.
The testimony adduced below disclosed that the Commissioner did not adopt any rules or regulations to implement the act because he concluded that it was sufficiently specific. A procedure was established, however, to facilitate ascertainment of the prevailing wage. First, the county was chosen as the "locality" within which to determine the prevailing wage pursuant to N.J.S.A. 34:11-56-26(2) because he determined that political unit to be the most proper subdivision for practical determination of the prevailing wage. Second, the number of collective bargaining agreements covering a particular type of work within each county are ascertained. Third, if there exists more than one collective bargaining agreement covering a particular type of work, he determines which agreement covers the majority of workers for a particular craft or trade. Fourth, the wage rate set forth in that collective bargaining agreement becomes the prevailing wage rate for that craft or trade in the county concerned. Fifth, the prevailing wage rate is promulgated and filed in the office of the Secretary of State. It was explained *532 at the trial that the Commissioner, to insure the accuracy of prevailing wage rate schedules, usually checked the collective bargaining contract rates against a building contractor's manual which is published monthly and, also, against bulletins received from the Associated General Contractors. It was noted that it has been the experience of the Department that any mistakes in a schedule are quickly brought to the Commissioner's attention by contractors.
In May and July of 1968 the Commissioner promulgated prevailing wage rate schedules for Somerset County for types of work which may be, for our purposes, classified as heavy and general construction, and operating engineers' work. Before these schedules were promulgated the Commissioner contacted the International Union of Operating Engineers, Local 825, and the Heavy and General Construction Workers, Local 472, and requested that he be provided with the contract of each with the Associated General Contractors. Only these unions were contacted because they were the only unions which were parties to collective bargaining agreements covering the aforementioned types of work within Somerset County. Thereafter, the pertinent prevailing wage schedules were prepared from those contracts and promulgated, as above described.
During the latter part of September 1968 the Commissioner was informed of the public works contract between defendants. The contract, on which work had commenced on September 1, 1968, provided for the construction of the Royce's Brook Interceptor Project at a cost of $624,775.40. Knowledge of this contract was gained through the Dodge Reports. A check of the commission records disclosed that no request had been received from defendant Sewer Authority for a copy of the prevailing wage rate which would be applicable to the contract. The Commissioner immediately caused an investigation to be conducted to determine whether the parties to the contract were complying with the act. When it was ascertained that there was a failure of compliance, the Commissioner ordered Renda to commence compliance and *533 to pay up the difference required under the Act. As heretofore indicated, no such payments were made and this action was instituted.
After a three-day trial the trial judge dismissed the complaint with prejudice and without costs for reasons expressed in an oral opinion. He found that the act applied to the contract in question. He also found the act "as a whole" to be constitutional, but he viewed the statutory scheme under the facts presented, which disclosed that the collective bargaining contracts here involved were each the product of one union and one employer's group, and as interpreted by the Commissioner, as an unconstitutional delegation of legislative power to private individuals. He expressed concern for what he found to be significant potential for arbitrary, self-interested action inherent in the scheme as interpreted by the Commissioner; that this was improper since the parties to the collective bargaining agreement are not accountable to the public and because their actions are not subject to review. He also concluded that the action should be dismissed for the additional reason that the Commissioner failed to secure wage assignments from the employees on whose behalf the action was instituted. See N.J.S.A. 34:11-56.40. He also noted that had he not dismissed the complaint both defendants would have been found jointly liable to the Renda employees.
The Commissioner appeals from the dismissal of the complaint and the Authority cross-appeals from the ruling that it would be jointly liable with Renda had the complaint not been dismissed.

I
We do not find that the act, or the Commissioner's interpretation thereof, presents a problem of delegation of legislative power. As we view the act, the Commissioner has not been delegated power to perform a legislative function; rather, he has merely been granted the power, as a matter *534 of legislative convenience, to determine a set of facts, i.e., the wage rates established under collective bargaining agreements in given circumstances. The Legislature has determined, for reasons set forth in section 1 of the act (N.J.S.A. 34:11-56.25), that the wages paid under collective bargaining agreements negotiated between labor unions representing a majority of the workmen engaged in the trade under collective bargaining agreements and their employers shall be the wages paid in the performance of public work. That public policy determination was for the Legislature. We find no constitutional bar thereto. To conclude, as the trial judge did, that under such a scheme "the public is not sufficiently protected against arbitrary or self-motivated action on the part * * * of such private party to whom the legislative function has really been delegated," misses the point and actually constitutes a substitution of judicial judgment for that of the Legislature. As was noted by the Kentucky Court of Appeals in Baughn v. Gorrell & Riley, 311 Ky. 537, 224 S.W.2d 436, 439 (1949), a case involving a somewhat similar statute, "The wisdom of this type of legislation may be debatable, but that is not a judicial question." See also, Union School District of Keene v. Commissioner of Labor, 103 N.H. 512, 176 A.2d 332 (Sup. Ct. 1961).
Moreover, we cannot agree that because of the facts presented here  that the Operating Engineers Local 825 and Heavy Laborers Local 472 are the only unions having jurisdiction over the work and the only unions in these respective trades having collective bargaining agreements covering the "locality"  there is potential for arbitrary, self-interested action which would be detrimental to the public good. It is an every day fact of industrial life that within the labor movement work jurisdiction boundaries in New Jersey have been laid out for the various local unions representing the various trades and crafts. These boundaries may encompass a single county or the entire State. To meet this organization strength, various employers have banded together *535 into trade associations for collective bargaining purposes. We regard it as being highly improbable that these competing groups representing opposing economic interests would conspire together or collaborate to subvert the interest of the public in work performed on public construction. As the Attorney General has noted in his brief, collective bargaining agreements reached between groups such as these represents a balancing of interests, not the interests of a group having a single purpose.
The amicus curiae have raised the question as to how statutory procedure established by the act protects the employer from unfair competition when the employer individually has no part in determining prevailing wages. The answer is relatively simple. The act was not adopted in the interest of employers. It was adopted to further the interest of the State. As was stated in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940):
Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. [at 127, 60 S.Ct. at 876]
The State need not resort to competitive bidding, and a bidder's rights are subordinate to the primary interests of the State as a consumer. Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 478-481 (1971).

II
An additional reason given by the trial judge for dismissing the complaint was that the failure of the Commissioner to obtain assignments from the employees of Renda barred him from maintaining this action for recovery of the deficiencies in wages. He regarded such assignments to be a condition precedent to the institution of the action under the provisions of N.J.S.A. 34:11-56.40. This section gives each workman who is paid less than the prevailing wage the *536 right to institute a civil action against his employer for such wage deficiency, allowing him to recover, in addition, costs and reasonable attorney's fees. The section also provides:
At the request of any workman paid less than the prevailing wage to which such workman was entitled under the provisions of this act the commissioner may take an assignment of the wage claim in trust for the assigning workman and may bring any legal action necessary to collect the claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court.
The Commissioner, however, did not institute this action under this section. N.J.S.A. 34:11-56.40 is not the only section which empowers the Commissioner to pursue an employer or a workman who fails to comply with the provisions of the act. Section 9 of the act (N.J.S.A. 34:11-56.33) establishes a procedure which requires a fiscal or financial officer of any public body to withhold sufficient sums for workmen who have been underpaid from payments due to an employer on account of public work performed. Section 12 of the act (N.J.S.A. 34:11-56.36) gives the Commissioner the power to supervise the payment of amounts due workmen under the act, and requires the employer to make such payments to the Commissioner to be held in a special trust account for the workmen. Such amounts are to be paid on the order of the Commissioner directly to a workman or workmen. This procedure is established "As an alternative to any other sanctions or in addition thereto, herein or otherwise provided by law for violation of this act * * *." As we read this section, it grants the Commissioner the implicit power to institute an action to require an employer to create a trust account as provided therein. The implicit right granted to the Commissioner here does not conflict with the right of action contained in section 16 (N.J.S.A. 34:11-56.40), since the judgment entered against an employer would not be in the name of individual workmen in fixed amounts, but rather would require an employer to *537 comply with the provisions of the section and establish the account directed.
Consequently, we find the action of the trial judge in dismissing the complaint to have been erroneous.

III
The trial judge also concluded in his oral opinion that had he not dismissed the complaint he would have found both Renda and the Authority liable for the wage deficiencies owed to Renda's employees. That conclusion is challenged by the Authority's cross-appeal.
The trial judge found that the contract between Renda and the Authority contained specifications requiring that the provisions of the act be complied with. Implicitly, he also found that the Authority did not mislead Renda with respect to the application of the act to the work in question. We have difficulty in understanding just what theory supports the trial judge's conclusion that the Authority should be held co-responsible with Renda. Absent some contractual provision as the basis for such liability, justification for finding a public body liable for a deficiency owing to employees under the act must be found in the provisions of the act itself. A search of the act discloses that the Legislature has adopted no provision under which a public body may be found liable to a workman. The only duty imposed upon a public body under the act is found in section 4 (N.J.S.A. 34:11-56.28), which requires the public body to ascertain the prevailing wage rate in the locality for the work to be performed and to "specify in the contract itself what the prevailing wage rate in the locality is for each craft or trade or classification of all workmen needed to perform the contract during the anticipated term thereof." We find no way that the act can be read to impose the sanctions or remedies expressly imposed on the employer on the public body.
The record supports the trial judge's finding that Renda knew or ought to have known he should bid his labor *538 costs on the basis of the prevailing wage scale then in force. In addition, that the specifications incorporated in the proposed contract were sufficient to put Renda on notice as to the applicability of the act as a matter of law.
We find Male v. Pompton Lakes Bor. Mun. Util. Auth., 105 N.J. Super. 348 (Ch. Div. 1969), to be factually distinguishable. However, to the extent that it may appear to hold to the contrary to our holding as to the liability of a public body under the act, it is disapproved.
The judgment of the Chancery Division is reversed and the cause remanded for further proceedings consistent with this opinion. No costs.