126 N.J. Super. 1 (1973)
312 A.2d 649
NEWARK LABORERS' PENSION-WELFARE FUNDS, PLAINTIFF-APPELLANT,
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 30, 1973.
Decided November 27, 1973.
*2 Before Judges CARTON, SEIDMAN and GOLDMANN.
Messrs. Apruzzese & McDermott, attorneys for appellant (Mr. Vincent J. Apruzzese, of counsel; Mr. Elwood J. Heerwagen, Jr., on the brief).
*3 Messrs. Bruck and Bigel, attorneys for respondent (Milton Bruck of counsel).
The opinion of the Court was delivered by SEIDMAN, J.A.D.
The issue in this appeal is whether, in an action to collect an employer's delinquent contributions to the welfare and pension fund of a laborers' union, costs and reasonable attorney's fees are recoverable from a surety company on payment bonds furnished in connection with the construction of two housing projects for which financing was provided by the New Jersey Housing Agency.
The trial judge held that they were not and entered judgment in favor of defendant surety. Plaintiff appeals.
Novel questions are involved. Counsel have cited no New Jersey cases dealing with the problem and our own research has disclosed none.
The basic facts were stipulated below. In 1968 and 1969 Mid Center Development Corp. entered into construction contracts for two moderate-income housing projects in Newark, financed in part by loans from the New Jersey Housing Finance Agency.
To assure payment in full to all parties furnishing labor and materials for the projects, Mid Center Development Corp. as principal and defendant as surety made and executed "dual obligee" payment bonds to the Housing Finance Agency as lender-obligee and, respectively, to Zion Towers and 440 Elizabeth Avenue Corp. as owner-obligee.
Subsequently, Mid Center Development Corp. subcontracted to Arthur H. Padula Construction Corp. (Padula) a portion of the work to be performed on the contracts. Laborers were made available to Padula from local unions pursuant to a collective bargaining agreement which provided, among other things, that all employers should contribute for every hour of work performed by laborers the sum of 20¢ to the Newark Laborers' Welfare Fund and a like sum to the Newark Laborers' Pension Fund. The sums were later *4 increased to 40¢ and 30¢ per hour, respectively. Provision was also made for a contribution of 5¢ per hour to an Industry Advancement Program.
The agreement further provided that when an employer became delinquent in the payment of contributions to the funds such employer could be assessed for costs, attorney's fees and other expenses incurred in endeavoring to collect the delinquent payments, such costs and expenses to be payable irrespective of whether litigation was commenced.
Padula became delinquent in the payment of contributions in the amount of $53,695.03, and plaintiff referred the matter to its attorneys for collection. Only partial payment was made and Padula was sued for the balance due, plus collection costs and expenses. A voluntary petition in bankruptcy resulted in an order restraining suits by creditors. Plaintiff then filed notices of claim under defendant's bonds for the sums of $17,935.78 and $19,048.09 due on the respective projects. After the institution of this suit defendant paid plaintiff $25,128.88 for the delinquent contributions but refused to pay the attorney's fees, plus interest and costs, in the claimed sum of $12,403.14.
Defendant maintains, as it did below, that its bonds provided for the payment of labor and material furnished in the prosecution of the work and that the claim for legal fees and expenses is not encompassed within such labor and materials. In addition, it contends that the bond excludes the payment of any costs and expenses of a suit on the bonds.
It is plaintiff's position that all labor furnished for the project is governed by the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq., and that the fees and expenses sought constitute part of the labor furnished for the projects. Plaintiff contends, further, that the fees and expenses were incurred in connection with the suit against Padula and not the one against defendant; and that, in any event, there is no provision in the bond prohibiting the award of such fees and expenses.
*5 Defendant argues in rebuttal that the projects are not public works and therefore the Prevailing Wage Act does not apply.
The trial judge ruled that the labor and materials bonds in question, required by the New Jersey Housing Finance Agency Law of 1967, N.J.S.A. 55:14J-9(a) (4), were in amounts "related to the project cost," but that attorney's fees incurred in attempting to secure payment of basic labor and material costs were collateral to and formed no part of the project cost. He deemed as controlling the cases of Faulkner Concrete Pipe Co. v. United States Fidelity & Guaranty Co., 218 So.2d 1 (Miss. Sup. Ct. 1969), and Davis Acoustical Corp. v. The Hanover Insurance Co., 22 A.D.2d 843, 254 N.Y.S. 14 (App. Div. 1964).
We disagree with the conclusion reached by the trial judge as to the attorney's fees and costs, and we consider the cited cases inapposite.
It is the declared public policy of this State "to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being." N.J.S.A. 34:11-56.25.
There is no doubt that the housing projects covered by the surety bonds here in issue are public works within the purview of the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. "Public Works," as defined in § 56.26(5) of the statute, includes construction work done under contract and paid for in whole or in part out of the funds of a public body. The term "public body" includes any instrumentality or agency of the State. § 56.26(4).
That the New Jersey Housing Finance Agency is an instrumentality of the State is clear from a reading of N.J.S.A. 55:14J-4(a), which provides:
There is hereby established in, but not of, the Department of Community Affairs a body corporate and politic with corporate succession, to be known as the "New Jersey Housing Finance Agency." The agency is hereby constituted as instrumentality exercising public *6 and essential governmental functions, and the exercise by the agency of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State. [Emphasis supplied].
The applicability of the Prevailing Wage Act to the labor provided at the construction projects involved herein is evidenced by N.J.S.A. 55:14J-37, which provides in pertinent part that housing sponsors (Zion Towers and 440 Elizabeth Avenue Corp. are so classed) granted a loan from the Housing Finance Agency, or builders, contractors or subcontractors engaged for the housing project, "shall pay the workmen employed in the performance of any contract for such construction or rehabilitation not less than the prevailing wage rate as determined by the Commissioner of Labor and Industry * * *."
The collective bargaining agreement covering the labor furnished for the projects required the employees to make certain contributions to the union welfare and pension funds. Such employer contributions for employee benefits are part of the wage rate. N.J.S.A. 34:11-56.30 so states:
The commissioner shall determine the prevailing wage rate and forthwith shall establish the prevailing wage in the locality in which the public work is to be performed ... The prevailing wage shall be determined and computed in accordance with rules and regulations issued by the commissioner as may be required to carry out the provisions of the act; provided, however, that employer contributions for employee benefits pursuant to a then existing bona fide collective bargaining agreement shall be considered an integral part of the wage rate paid by employers * * *. [Emphasis supplied]
If any workman is paid less than the prevailing wage rate to which he is entitled, he or his designated agent or representative may recover in a civil action the full amount due, together with costs and such reasonable attorney's fees as may be allowed by the court. N.J.S.A. 34:11-56.40.
In our view, the trial judge's reasoning, which led him to conclude that attorney's fees incurred in attempting to collect a wage claim formed no part of the project cost and therefore *7 were not covered by the payment bonds, failed to take into account the clear public policy expressed in both the Prevailing Wage Act and the Housing Finance Agency Law, and was largely based on two cases which are clearly distinguishable.
One of the cases cited, Faulkner Concrete Pipe Company v. United States Fidelity & Guaranty Company, supra, involved an action by a materialman against a contractor and its surety for attorney's fees due on an indebtedness. It was there held that where neither the surety bond nor the statute authorized the collection of attorney's fees incurred because of the contractor's default, the materialman was not entitled to recover such fees from the surety. A similar result was reached in the other case, Davis Acoustical Corp. v. The Hanover Insurance Company, supra, where a subcontractor sought to recover attorney's fees from the general contractor's surety company, relying upon a clause in his contract that in the event it was necessary to refer any claim to an attorney, plaintiff would be entitled to an additional 25% of the amount claimed.
Neither case, it should be noted, involved public works statutes or prevailing wage laws applicable thereto. However, United States v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), remarkably parallels the case here under consideration.
That case concerned the extent of the liability of the surety on a payment bond furnished by a contractor, as required by the Miller Act (40 U.S.C.A. § 270a et seq.), for the protection of persons supplying labor for the construction of federal public buildings. The collective bargaining agreement under which the laborers were hired obligated the contractor to pay them wages at specified rates and, in addition, to pay 7 1/2 cents an hour of their labor to the trustees of a health and welfare fund. When the contractor failed to pay in full the required contributions the trustees of the fund, pursuant to the Miller Act, sued the surety on the payment bond to recover *8 the balance due, plus attorney's fees, court costs and expenses.
In Carter the surety contended that since only the master labor agreement made mention of payment of legal fees for failure to make the required contributions, and no reference thereto appeared in the surety bond, it was not liable for costs and attorney's fees.
The court rejected the argument, emphasizing that the Miller Act represented a congressional effort to protect persons supplying labor and material for the construction of federal public buildings, and that the essence of the stated policy was to provide a surety who must make good the obligation of a defaulting contractor to his suppliers of labor and materials. 353 U.S. at 217, 77 S.Ct. 797, 1 L.Ed.2d at 782.
Moreover, said the court, not until the required contributions have been made will the employees have been "paid in full" for their labor, and so long as the employers' obligations have not been satisfied, the Miller Act will not have served its purpose. The contractor's obligation to pay such items as attorney's fees, court costs and expenses, the court commented further, formed part of the consideration which he agreed to pay for his employees' services, and these items must be included if the employees are to be "paid in full" the sums justly due them. 353 U.S. at 220, 77 S.Ct. at 798, 1 L.Ed.2d at 784.
Since the Prevailing Wage Act is remedial in nature, Male v. Pompton Lakes Mun. Util. Auth., 105 N.J. Super. 348, 355 (Ch. Div. 1969), it is entitled to a liberal construction and application in order to effectuate the strong public policy of protecting those whose labor goes into public projects. Carter, supra, 353 U.S. at 216, 77 S.Ct. at 796, 1 L.Ed.2d at 782.
It is evident that the Legislature sought to prevent the frustration of its declared policy by providing for the additional recovery of costs and reasonable attorney's fees, thus assuring laborers full payment of the wages due them.
*9 Defendant knew or should have known that its bonds were posted pursuant to N.J.S.A. 55:14J-9(a)(4). A surety's liability on its bonds must be at least coextensive with the obligations imposed by the applicable statutes if the bonds are to have their intended effect. Carter, supra, 353 U.S. at 216, 77 S.Ct. at 796, 1 L.Ed.2d at 782. See also Gypsum Contractors, Inc., v. American Surety Co., 37 N.J. 315, 320 (1962). While the amounts of the bonds were to be related to the project cost "as established by regulation," the liability assumed was payment for all labor furnished in the prosecution of the work. Unless payment for such labor includes costs and reasonable attorney's fees incurred in its enforcement, the aggrieved workmen will be deprived of full relief and the legislative purpose defeated. Cf. Male v. Pompton Lakes Mun Util. Auth., supra, 105 N.J. Super. at 359-360.
The trial judge's concept that attorney's fees incurred in attempting to secure payment of the labor costs were collateral to and formed no part of the project cost is, in our view, too narrow an interpretation of the payment bonds in light of the clear statutory policy that laborers are to be paid fully for their work.
Furthermore, as plaintiff points out, the fees and costs it seeks to recover are limited to those incurred in attempting to collect the delinquent contributions directly from Padula. It contends, and we think correctly so, that the exclusion of costs and expenses of suit from defendant's liability applies, if at all, to suits on the bonds themselves. Paragraph 2 of the bonds, which refers to the institution of suit by claimants and the prosecution thereof to final judgment, provides "that the Obligees hereunder shall not be liable for the payment of any costs and expenses of any such suit" (Emphasis supplied). There is, thus, no need to consider the further issue raised whether the word "Obligees" was a mistake and should have been "Obligors."
We are convinced that a result which will produce for the laborers represented by plaintiff full payment of their wages and included benefits is sound and will effectuate the *10 clear legislative purpose. We hold, therefore, that defendant is liable to plaintiff on its bonds for the costs and reasonable attorney's fees incurred in endeavoring to recover the delinquent contributions, and that the cause should be remanded for a determination of the reasonable amount of such fees and costs. N.J.S.A. 34:11-56.40.
Reversed and remanded for further proceedings consistent with this opinion.