168 N.J. Super. 19 (1979)
401 A.2d 698
DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF WORKPLACE STANDARDS, PLAINTIFF-RESPONDENT,
v.
UNION PAVING AND CONSTRUCTION COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1979.
Decided April 12, 1979.
*21 Before Judges LORA, MICHELS and LARNER.
Mr. David A. Biederman argued the cause for appellant (Mr. Biederman and Mr. Matthew Grayson on the brief).
Mr. Michael S. Bokar, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney *22 General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Bokar on the brief).
The opinion of the court was delivered by LORA, P.J.A.D.
Union Paving and Construction Company, Inc. (Union) appeals from the decision of the Commissioner of Labor and Industry to place appellant's name on a list of firms ineligible for public works contracts for failing to pay prevailing wages, pursuant to the debarment provisions of the Prevailing Wage Act, N.J.S.A. 34:11-56.25, et seq.
The act provides in pertinent part that any contractor or subcontractor "engaged in public works" contracts who is determined to have failed to pay its employees the prevailing wage, shall be listed by the Commissioner as ineligible for the award of any public contract during a three-year period from the date of listing. N.J.S.A. 34:11-56.37, 34:11-56. 38. Union contends that this "blacklisting" is inapplicable and unlawful as to it because no "intentional violations" were committed. Alternatively, it argues that if the statute is applicable to unintentional acts, then it violates due process under State and Federal Constitutions. Lastly, Union contends that the Commissioner's action was arbitrary and an abuse of discretion.
Testimony adduced at an administrative hearing before a hearing officer indicated that Union had not paid the prevailing wage to certain employees on each of six projects. Union's president, Carmine Burdi, conceded that these violations had occurred.
The record shows that in September 1968 the City of Rahway awarded a contract to Union in the amount of $147,744 for the construction of a culvert. Examination revealed that six employees had been underpaid a total of $1,224.36, according to the then prevailing wage rates for their respective job classifications. A copy of this audit (or *23 "Statement of Amounts Indicated as Due Employees") was sent to appellant on June 9, 1972 with an accompanying request for payment to the Division. Union did not send its check to cover the deficiency until November 1973. On March 10, 1970 the Township of Union awarded a contract to Union in the amount of $103,077 for paving and reconstruction work on Oakland Avenue. A field audit in 1972 revealed that 24 employees on the project had been underpaid a total of $3,778.42, which deficiency was paid by Union in October 1974.
On August 21, 1975 the City of Linden awarded a contract to Union in the amount of $57,000 for the deepening and widening of Westbrook. A routine inspection and audit of the payroll records disclosed that three employees on the project had been underpaid a total of $1,577.25. Payment of the deficiency was made within a reasonable amount of time after the November 12, 1975 audit was sent to appellant.
On October 14, 1975 the Town of Westfield awarded a contract to Union in the amount of $105,000 for the construction of a detention basin at Fairview Cemetery. Routine inspection and subsequent examination of payrolls for that project revealed that three employees were due gross wages totalling $2,464.40. An audit dated August 26, 1976 was sent to Union and payment of the underpaid wages was received on September 8, 1976.
On May 18, 1977 the Township of Union awarded a contract to Union in the amount of $398,250 for the construction of a reinforced concrete flume and a detention basin. An onsite audit conducted incident to a routine inspection on October 23, 1977 disclosed that five workmen had been underpaid a total of $1,820.40. The audit was presented to appellant at his office that day, and payment made immediately to the field examiner.
The Union County Board of Freeholders on June 30, 1977 awarded Union a $158,669 contract for the replacement of an existing bridge over Westbrook in the City of Linden. Again, an on-site inspection of payroll records disclosed that *24 three employees on the project had been underpaid a total of $1,791.25. Payment of the deficiency was made at the time of the December 1977 audit.
Carmine Burdi, Union's president, testified that he had been the principal owner and operator of the company for about 26 years. During that time the company had principally been involved in construction work for private clients and governmental bodies. He admitted that there had been violations of the Prevailing Wage Act in each of the six aforementioned public projects. He conceded also that at all relevant times he was aware of the requirements of the act. The delays in meeting the demands for deficiency payments on the first two projects were attributed to the "bad shape" of the company's finances. The violations came about because "we turned over office help three or four times up to now" and "you just can't watch everything," although he knew that the company was responsible for full compliance with prevailing wage laws. From 1968 to 1971 appellant had 10 to 15 regular employees, which number fell to two employees over the last three to four years due to declining business. Furthermore, the bad bookkeeping system which contributed to the wage law infractions had since been corrected. He maintained that none of the violations had been intentional, and that the "blacklisting" of Union would put it out of business.
The New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq., was intended by the Legislature to protect both employees and employers:
It is declared to be the public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being.
By § 3 (N.J.S.A. 34:11-56.27) the act is made applicable to every contract in excess of $2,000 "for any public work *25 to which any public body is a party," and every contract covering such work must contain a provision stating the prevailing wage rate to be paid (as shall be designated by the Commissioner, N.J.S.A. 34:11-56.30) to the workmen employed in the performance of the contract.
The "prevailing wage" is defined as
* * * the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done. [N.J.S.A. 34:11-56.26 (9)]
The "locality" is generally defined as the county where the work is to be performed. The act and its scheme for establishing prevailing wage rates was held constitutional and a delegation of legislative power to the Commissioner meeting the requirements of due process. Male v. Ernest Renda Contracting Co., 122 N.J. Super. 526, 533-534 (App. Div. 1973), aff'd o.b. 64 N.J. 199 (1974), cert. den. 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974). However, as Union points out in its brief, Renda did not decide the propriety and constitutionality of the debarment clause here involved.
The two companion provisions, N.J.S.A. 34:11-56.37 and 34:11-56.38, provide as follows.

34:11-56.37 Listing by commissioner of contractors failing to pay prevailing wages
In the event that the commissioner shall determine, after investigation, that any contractor or subcontractor has failed to pay the prevailing wage he shall thereupon list and keep on record the name of such contractor or subcontractor and forthwith give notice by mail of such list to any public body who shall request the commissioner so to do. Where the person responsible denies that a failure to pay the prevailing wage has occurred, he shall have the right to apply to the commissioner for a hearing which must be afforded and a decision rendered within 48 hours of the request for a hearing. If the commissioner rules against the petitioning party he shall have the right to apply for injunctive relief in the Superior Court against the listing by the commissioner. [L. 1963, c. 150, § 13]

*26 34:11-56.38 Prohibition against award of contract to listed contractors; limitation
The public body awarding any contract for public work or otherwise undertaking any public work shall first ascertain from the commissioner the list of names of contractors or subcontractors who have failed to pay prevailing wages as determined in section 14 of this act,[1] and no contract shall be awarded to such contractor or subcontractor, or to any firm, corporation or partnership in which such contractor or subcontractor has an interest until 3 years have elapsed from the date of listing as determined in section 14 of this act.[1] [L. 1963, c. 150, § 14]
Facially these provisions, which lack such qualifying words as "knowingly," "willfully" or "intentionally," embody a civil sanction with no express mens rea requirement. Accordingly, they may be distinguished from the misdemeanor sanctions of N.J.S.A. 34:11-56.35, which provides for fine and/or imprisonment of an employer upon conviction for willfully hindering or delaying the Commissioner in performing his enforcement duties; failing to maintain or falsifying required records, or paying less than prevailing wage.
In recommending the debarment sanction the hearing officer characterized appellant's wage law violations on the six projects spanning the years 1968-1977 as a "repeated disregard of the interests of its employees" and lacking in any "good faith intention to fulfill its duties and responsibilities."
Union Paving first argues that these were unintentional violations and that debarment was intended to apply only to intentional violations. The underlying premise, while not expressly stated, is that debarment under the act amounts to a criminal or quasi-criminal sanction, more devastating to the contractor than the "misdemeanor" provisions of § 35 because the contractor who relies heavily on public contracts will be forced to shut down. This line of reasoning misconstrues the nature of the penalty, if in fact debarment may be considered a penalty. Copper Plumbing and Heating Co. v. *27 Campbell, 110 U.S. App. D.C. 177, 180-182, 290 F.2d 368, 371-373 (D.C. Cir.1961).
The Prevailing Wage Act is similar to, if not patterned after, the federal prevailing wage statute, the Davis-Bacon Act, 49 Stat. 1011, 40 U.S.C.A. § 276a et seq. The two statutes do not employ precisely the same language, although both incorporate a three-year debarment clause. Cf. Cipparulo v. David Friedland Painting Co., 139 N.J. Super. 142, 149 (App. Div. 1976). The federal act, after setting forth the duty of contractors awarded federal construction contracts to pay the prevailing wage rates established by the Secretary of Labor, then spells out the penalty:

§ 276a-2. Payment of wages by Comptroller General from withheld payments; listing contractors violating contracts
(a) The Comptroller General of the United States is authorized and directed to pay directly to laborers and mechanics from any accrued payments withheld under the terms of the contract any wages found to be due laborers and mechanics pursuant to sections 276a to 276a-5 of this title; and the Comptroller General of the United States is further authorized and is directed to distribute a list to all departments of the Government giving the names of persons or firms whom he has found to have disregarded their obligations to employees and subcontractors. No contract shall be awarded to the persons or firms appearing on this list or to any firm, corporation, partnership, or association in which such persons or firms have an interest until three years have elapsed from the date of publication of the list containing the names of such persons or firms.
Under Davis-Bacon, in order to invoke debarment, the federal contractor need only be "found to have disregarded" his obligations to employees. The New Jersey act requires only that the contractor be found to have "failed" to pay the prevailing wage. An interpretation that mens rea is not required for federal contract debarment is supported by the implementing regulations, which repeatedly differentiate Davis-Bacon from other federal debarment laws. See, e.g. 29 C.F.R. 25.6(b) (1), which states that debarment may be authorized for any "aggravated or willful violation" of any labor standards provisions of any statutes "other than the *28 Davis-Bacon Act," and which further provides that "In cases arising under contracts covered by the Davis-Bacon Act, the ineligibility provision prescribed in that Act shall govern," thereby recognizing that Davis-Bacon adopts a standard for debarment other than "willfulness" or intentional conduct. See also, 29 C.F.R. § 5.6(c) (1), 41 C.F.R. § 1-1.602-1.
Moreover, our courts have consistently upheld the constitutionality of civil penalty and strict liability provisions, and, in some instances, criminal laws that forego the need to establish intent. See, e.g., Morss v. Forbes, 24 N.J. 341, 358 (1957); Health Dep't v. Concrete Specialties, Inc., 112 N.J. Super. 407, 411 (App. Div. 1970); Dare v. State, 159 N.J. Super. 533, 538 (App. Div. 1978); United States v. Park, 421 U.S. 658, 672-674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); State v. Graziani, 60 N.J. Super. 1, 17 (App. Div. 1959), aff'd o.b. 31 N.J. 538 (1960).
Consistent with such cases are the administrative decisions under the Davis-Bacon Act of the United States Department of Labor Wage Appeals Board. In In re Bone, 23 W H cases 1054 (1978), where, as here, a contractor claimed that prevailing wage violations were the result of errors by the company's bookkeeper which ceased after they were brought to the company's attention by the contracting agency, the contractor's motion for reconsideration of a decision of the Wage Appeals Board affirming a decision by the Administrator of the Wage and Hours Division recommending debarment for the prescribed three-year period, was denied on the ground that the contractor was responsible for the work performed by his clerical employees and that the failure to properly instruct the bookkeeper in the preparation of payrolls indicated a disregard of petitioner's obligation not only to the contracting agency but also to his employees, many of whom were underpaid as a result of his failure to observe his obligations.
Even under a prevailing wage debarment statute requiring a showing of intent, it has been held that the principal *29 officers of a corporate contractor cannot claim ignorance of the failure of subordinates to pay prevailing wages. Pennsylvania Prevail. Wage App. Bd. v. Steve Black, 27 Pa. Cmwlth. 21, 365 A.2d 685, 688 n. 8 (1976); Dale D. Akins, Inc. v. Commonwealth Dept. of L. & I., 16 Pa. Cmwlth. 191, 329 A.2d 869 (1974).
In any event, assuming arguendo that the New Jersey act incorporates a requirement that the violation be "intentional," the facts presented below may be viewed as raising an inference of intent or flagrant disregard rising to the level of intent. Union was not debarred on the basis of a single violation of the wage laws. Rather, the Commissioner ordered the debarring upon evidence of violations occurring on six projects over a nine-year period. No action was taken after a 1972 audit disclosed violations on two projects in 1968 and 1970. It was only after violations were discovered in four subsequent contracts in 1975-1977 that the Department decided to take action. A finding that these infractions were unintentional would necessitate acceptance of Carmine Burdi's testimony to that effect at face value, a finding which the hearing officer did not make. As a matter of fact, he found that "petitioner's repeated disregard of the interests of its employees, as shown by its payment of less than the required wage on six public projects, clearly does not evidence a good faith intention to fulfill its duties and responsibilities."
The debarment does not constitute a revocation of Union's "license" to do business. The company remains free to perform work for nonpublic clients. The listing of Union is simply an expression by the State that the company has failed to meet the standards of doing business required of those who would seek public contract work. Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 478 (1971).
Appellant urges in the alternative that application of the "debarment" clause in this case is unconstitutional as violative of federal and state due process standards. It argues that "[T]he right to engage in business is a property right of which [appellant] cannot be deprived without due process *30 of law," said right in this instance being the right to bid for and to be awarded public works contracts.
We have previously held that the Prevailing Wage Act "was not adopted in the interest of employers. It was adopted to further the interest of the State." Male v. Ernest Renda Contracting Co., supra, 122 N.J. Super. at 535. Similarly, the Davis-Bacon Act "was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." United States v. Binghamton Constr. Co., 347 U.S. 171, 176-177, 74 S.Ct. 438, 441, 98 L.Ed. 594 (1954). The State and its agencies, including municipal bodies, continue to enjoy some autonomy in their selection of contractors. As was stated in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940):
Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. [at 127, 60 S.Ct. at 876]
The United States Supreme Court, in Binghamton Construction, supra, 347 U.S. at 176-177, 74 S.Ct. at 441, held that the Davis-Bacon Act "confers no litigable rights on a bidder for a Government construction contract." In Gonzalez v. Freeman, 118 U.S. App. D.C. 180, 334 F.2d 570 (1964), a debarment without notice was struck down for lack of procedural due process, while the court observed in passing:
Thus to say that there is no "right" to government contracts does not resolve the question of justiciability. Of course there is no such right; but that cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person or that such person is not entitled to challenge the processes and the evidence before he is officially declared ineligible for government contracts. [118 U.S. App. D.C. at 184, 334 F.2d at 574]
However, in Trap Rock our Supreme Court was careful to distinguish Gonzalez on the grounds that Gonzalez "did not *31 involve a procurement program designed to meet the government's own needs as purchaser," but rather the appellant's rights to resell in other countries commodities already purchased from the government. 59 N.J. at 484. Chief Justice Weintraub stated that the Gonzalez case
* * * stands for the view that if a specific act is itself to be sufficient grounds for debarment, the agency should prohibit the act by rule and announce that a violation could itself lead to such consequences.
[59 N.J. at 485; emphasis in original]
Accordingly, Gonzalez appears to vindicate the actions taken against Union to the extent that N.J.S.A. 34:11-56.37 states plainly that failure to pay prevailing wage rates will lead to one's listing as an ineligible contractor. Notwithstanding this concept, it otherwise appears that the weight of authority is contrary to appellant's assertion of a valid "property" interest, sufficient to meet the threshold due process requirements. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Union's rights remain subordinate to the State's primary interests as a consumer, and its ineligibility for public contracts is a decision within the State's prerogative to determine with whom it and its agencies will deal.
Appellant further argues that the statute's debarment clause is "mandatory" on its face, regardless of the amount of wages underpaid or the intent involved, and hence is susceptible to producing arbitrary and overly harsh results for minor infractions. While the act states that if "any contractor or subcontractor has failed to pay the prevailing wage," the Commissioner "shall thereupon list and keep on record the name of such contractor or subcontractor," N.J.S.A. 34:11-56.37, and is therefore mandatory in tone, the factual complex here involved indicates that in practice it has not been summarily applied. If debarment were automatically applied, Union would have been "listed" immediately upon the field examiner's audit in 1972, revealing wage violations *32 on two projects. In fact, no "listing" or other administrative enforcement procedures were instituted until later investigations disclosed violations on four more jobs. It is clear that the application of the debarment sanction has been left to the Commissioner's discretion and, as the statute states, "after investigation."
The Commissioner's failure to issue administrative regulations is not fatal to his exercise of the debarment power. The statute itself is clear as to what action may trigger the sanction, i.e., failure of the contractor to meet his statutory responsibility to pay the prevailing wage. A similar challenge was raised in Trap Rock Industries v. Kohl, supra, citing the agency's failure "to specify in rules the factual patterns which spell out a lack of moral responsibility," sufficient to support a builder's loss of prequalification status. The court rejected the argument, noting that "the subject [of moral responsibility] defies a cataloguing of all conceivable factual patterns which reveal a moral deficiency." 59 N.J. at 483. The court found the existing standard to be adequate; "indeed `it is difficult to conceive of a standard which would be both more precise and equally workable.' Elizabeth Federal S. & L. Assn. v. Howell, 30 N.J. 190, 194 (1959)." 59 N.J. at 484. Here, the statutory standard, i.e., failing to pay the prevailing wage, is a far more tangible one than was faced in Trap Rock under the general standard of "moral responsibility."
Our review of the record establishes that the Commissioner's decision is supported by substantial credible evidence in the record, is not arbitrary and does not constitute an abuse of discretion. The evidence demonstrates a pattern of infractions over a period of years. Although the amount of monies underpaid is relatively small in contrast to the aggregate amounts of the public contracts involved ($12,655.99 in underpayments as against $966,740.20 in contracts), appellant's conduct represents a breach of his statutory duty to safeguard the interests of his employees which the statute seeks to protect, as well as the interests *33 of the State. N.J.S.A. 34:11-56.25; Male v. Ernest Renda Contracting Co., supra.
Affirmed.
NOTES
[1] Probably should read "section 13 of this act." See § 34:11-56.37.