Honorable Tim Sheldon State Senator, 35th District P.O. Box 40435 Olympia, WA 98504-0435
Dear Senator Sheldon:
By letter previously acknowledged, you requested our opinion on the following questions in light of the decision of the Court of Appeals in Telford v. Thurston Cy. Bd. of Comm'rs, 95 Wn. App. 149,974 P.2d 886, rev. denied, 138 P.2d 1015, 989 P.2d 1143 (1999). We have paraphrased your questions slightly for ease of understanding.
 QUESTIONS 1. Are the Washington State Association of Counties and the Washington Association of County Officials subject to the public records provisions of the Public Disclosure Act, RCW 42.17.250 through 42.17.348?
 2. Are the Association of Washington Cities and the Washington Public Ports Association subject to the public records provisions of the Public Disclosure Act, RCW 42.17.250 through 42.17.348?
 SHORT ANSWER
In Telford v. Thurston Cy. Bd. of Comm'rs, the Washington Court of Appeals held that the Washington State Association of Counties (WSAC) and the Washington Association of County Officials (WACO) were the functional equivalents of public agencies for purposes of the campaign finance provisions of the Public Disclosure Act. Telford, 95 Wn. App at 166. However, the Court of Appeals opinion suggests that the given purpose of a law must be taken into account in determining whether "hybrid" organizations with both private and public attributes are the "functional equivalent" of public agencies. Thus, whether these organizations are the functional equivalent of public agencies for purposes of the public records provisions of the Public Disclosure Act is not answered by the Telford decision.
The answer to this question would depend on a case-by-base analysis that takes into account the purposes of the public records provisions of the Public Disclosure Act and the nature of the particular organization. A determination of whether an entity's records are subject to the public records provisions likely would depend in part on whether the entity has authority to make and implement decisions of a governmental nature. SeeTelford, 95 Wn. App. at 163. Therefore, to determine whether these organizations are the functional equivalents of public agencies under the public records provisions of the Public Disclosure Act would require a fully developed factual record on a particular issue.
We are not in a position to provide a definitive response to your inquiry with respect to the organizations that were parties to theTelford case, WSAC and WACO, or with respect to the Association of Washington Cities (AWC) or the Washington Public Ports Association (WPPA). Given the ambiguity in the law, the application of the Public Disclosure Act on the basis of "functional equivalent" test is a fact-specific inquiry. Attorney General opinions are for the purpose of addressing questions of law rather than resolving issues of fact. However, while we cannot resolve these factual issues, we can discuss the general legal framework that the courts could apply to the factual situations.
 ANALYSIS
In that the Telford decision is central to your questions and to our analysis of them, it is appropriate to begin with a discussion of Telford and the principles to be drawn from it.[1]
At issue in Telford was whether WSAC and WACO were "agencies" for purposes of the campaign finance provisions of the Public Disclosure Act, and thus were prohibited by RCW 42.17.128, .130, and .190 from donating their funds to support or oppose initiative campaigns. Telford, 95 Wn. App. at 152. The Telford
court concluded, as had the trial court, that neither association was a public agency as specifically defined by RCW 42.17.020(1).Id. at 152. However, Telford determined that the reach of the Act, liberally construed, was not confined to statutorily defined "agencies", but might also encompass entities that were the "functional equivalent" of agencies for a given purpose. Id. at 161.
The functional equivalence test "determines, on acase-by-case analysis of various factors, whether a particular entity is the functional equivalent of a public agency for a givenpurpose." Id. at 161 (emphasis added). Telford identified four factors to be considered in determining whether an entity having both public and private characteristics is the functional equivalent of a public agency for purposes of the campaign finance provisions of the Public Disclosure Act: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by government. In considering the four factors, the Telford court had before it a great deal of factual information about WSAC and WACO. The court considered the history and formation of each association, its organic documents, its sources of revenue and funding system, its purposes, its membership, its services and activities, the degree to which the association was controlled by public officials, whether the association participated in public retirement systems or other government systems, and the reporting and auditing of the association's financial affairs, including whether the association was audited by the state.
Telford then considered these facts, and the four factors, in light of the relevant statutory context. As identified by the Telford court, that context was comprised of statutes prohibiting the expenditure of public funds in initiative campaigns and promoting disclosure of such expenditures. Id. at 165-66. Likely because of this financial context, the funding of each association played a prominent role in the court's analysis.Id. at 164-65. The court pointed out that each association received most of its revenue in the form of dues paid directly from county funds, and the dues were essentially provided in block form rather than in return for specific services. The court observed that in this respect, county funds were made available for expenditure by WSAC and WACO, essentially within the discretion of the two organizations, as though the funds were private funds. Id at 164. The court also observed that each association received additional financial support from government. Id. at 165.
In this factual and statutory context, the Telford
court concluded that WSAC and WACO were the functional equivalents of public agencies, and that subjecting them to the Act was in keeping with the purposes of the relevant statutes, i.e., to prohibit government expenditures for "private political agendas" and to promote disclosure of political expenditures. Id. at 165-66 ("Allowing WSAC/WACO to use their public funds to support private political agendas would contravene both policies.").
Telford suggests another factor that may be appropriate for evaluating functional equivalence under the public records provisions of the Public Disclosure Act. Noting that one of the factors used by an Oregon court was the authority of the entity to make and implement decisions, Telford concluded this factor was not relevant to campaign funding provisions of Washington's law, though it might be relevant to the public records provisions:
Whether an entity has authority to make and implement decisions may be relevant to determining whether that entity's records should be available to the public, but it has no relation to the misappropriation of public funds.
Telford, 95 Wn. App. at 163.[2] Thus, the Telford court was careful to point out that its inquiry was context-specific and spent a significant portion of the opinion evaluating the level of governmental funding for purposes of campaign financing. Id. at 159-60, 164-65.
With this background in mind, we proceed to your specific questions:
 1. Are the Washington State Association of Counties and the Washington Association of County Officials subject to the public records provisions of the Public Disclosure Act, RCW 42.17.250 through 42.17.348?
As the above discussion demonstrates, the fact thatTelford determined that WSAC and WACO were the functional equivalents of "public agencies" in the context of campaign financing statutes does not necessarily mean that the associations would be so considered for other purposes. The question then becomes what tests our courts would use to evaluate whether these organizations are the "functional equivalents" of public agencies for the particular statutes that relate to disclosure of documents. In the context of Telford, the court did not find relevant the additional factor of "the authority of the entity to make and implement decisions" as outlined in Marks v. McKenzieHigh Sch. Fact-Finding Team, 878 P.2d 417, 423 (Ore. 1994). However, we believe this factor would be considered relevant for purposes of the public records provision of the Public Disclosure Act.
There are several considerations that would support application of this test under Washington law. First, the provision of the Public Disclosure Act that declares the policy of the public records provisions relates to governance: "[F]ull access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW42.17.010(11). The term "governance" is a term that refers to the exercise of sovereign power to make decisions and meet the public needs. Thus, the court might logically look to the ability to make and implement decisions of a governmental nature in determining whether an association is the functional equivalent of an agency for purposes of the public records provisions of the Public Disclosure Act.
Unlike the issue before the court in Telford, your inquiry is posed in very general terms and asks whether, as an abstract matter, WSAC and WACO should be considered agencies for purposes of the public records provisions of the Public Disclosure Act. Providing a definitive answer to your question is problematic for two related reasons. First, the statutes related to WSAC and WACO do not establish that these associations are the functional equivalents of agencies for purposes of the public records provisions of the Public Disclosure Act. Second, asTelford makes plain, functional equivalency analysis is highly fact dependent. Although the Telford court recounts numerous facts relating to WSAC and WACO, presumably the parties to that litigation presented the factual information that they thought relevant to the specific challenge at issue — the expenditure of public funds for purposes of political campaigns. Additional facts not presented or considered in Telford might well be relevant to whether WSAC and WACO would be treated as "public agencies" for purposes of the public records provisions of the Act. Whether an entity is public "may depend on the purpose for which the determination is made." Telford, 95 Wn. App. at 157
n. 11.
An examination of the statutes related to WSAC and WACO does not provide a definitive answer to the nature of these associations for purposes of the public records provisions of the Public Disclosure Act. As noted in Telford, there are statutes relating to WSAC and WACO that declare the public necessity of coordinating county administrative programs. RCW 36.32.335; RCW36.47.010. Both acts require county officials to take such action as is necessary to effect this coordination and empower the counties to employ WSAC or WACO to fulfill their statutory duties. Id. However, we cannot conclude from these statutes standing alone that WSAC or WACO exercises governmental power. As in Telford, this determination would depend on additional facts.
A number of other statutes provide for WSAC or other associations to nominate or appoint individuals to advisory bodies or to boards. Several of these statutes provide for the associations to recommend persons for appointment by the governor or other appointing authority. For example, RCW 43.20.030 provides that before appointing the county official member of the State Board of Health, the governor "shall consider any recommendations submitted by the Washington state association of counties." Similarly, RCW47.26.121 provides that certain appointments to the Transportation Improvement Board shall be made by the Secretary of Transportation from among nominees of the Washington State Association of Counties for county members, the Association of Washington Cities for city members, the Washington State Transit Association for the transit members, and the Washington Public Ports Association for the port member. Other statutes provide for WSAC to appoint members to boards or committees. See, e.g., RCW 43.32.010, which creates a state design standards committee with some members appointed by the executive committee of WSAC.
However, in many instances, the Legislature has also provided that indisputably private organizations will make nominations or appointments to such boards or committees. See, e.g, RCW 47.06C.030, which provides that the transportation permit efficiency and accountability committee shall include among its nonvoting members a member designated by each of the following organizations: the Consulting Engineers Council of Washington, the Associated General Contractors of Washington, the Association of Washington Business, the Washington State Building and Construction Trades Council, and statewide environmental organizations. See also RCW 36.110.030 (three members of Jail Industries Board of Directors to be selected from a list of nominations provided by state-wide labor organizations representing a cross-section of trade organizations). Thus, the statutes that provide for nomination or appointment to advisory councils or boards do not necessarily establish the associations as public agencies for purposes of the public records act provisions of the Public Disclosure Act. [3]
As noted above, Attorney General opinions are provided on legal questions. RCW 43.10.030(5)-(7). The opinion process is not designed to gather facts or to make factual determinations. Yet factual information clearly is relevant to a functional equivalence analysis under Telford. For these reasons, we cannot be sufficiently certain that all information relating to WSAC and WACO that would be relevant to your inquiry is before us and, accordingly, we are not in a position to respond to your inquiry with a meaningful level of confidence in the analysis that we would provide. Much might depend, for instance, on the nature of a specific public record requested and the relationship of that record (if any) to an organization's "governmental" functions (if any).
We do observe, however, that even if one were to consider only the facts recounted in Telford, those facts would not necessarily lead to the conclusion that WSAC and WACO are the "functional equivalent" of public agencies for purposes other than the specific issue before the Telford court. This is so because in a functional equivalence analysis, the weight to be given to relevant facts varies with the purposes of the statutes at issue.Telford, 95 Wn. App. at 157 n. 11. For example, Telford notes that "[w]hether an entity has authority to make and implement decisions may be relevant to determining whether the entity's records should be available to the public, but it has no relation to the misappropriation of public funds", and similarly suggests that the public versus private status of an entity's employees may or may not shed light on legislative intent, depending on the purpose of the statutes at issue. Id. at 163. See also Pub. Citizen HealthResearch Group v. Dep't of Health, 668 F.2d 537, 543 (D.C. Cir. 1981) (recognizing that authority in law to make independent decisions on behalf of government may be an important but not necessarily determinative consideration in whether an entity is an "agency" for purposes of the federal Freedom of Information Act (FOIA).[4]
The public records provisions of the Public Disclosure Act serve purposes different from the campaign finance provisions of the Act at issue in Telford. The public records provisions focus on the relationship between the people and the institutions that they have created to govern themselves. It is intended to ensure that the people remain sufficiently well informed about the conduct of their government institutions to properly control those institutions. The public records provisions thus are designed to ensure that the people have "full access to information concerning the conduct of government . . . [as a] necessary precondition to the sound governance of a free society", and to ensure that the people remain informed "so that they may maintain control over the instruments that they have created." RCW 42.17.010(11), .251. In a similar vein, the Act defines a "public record" to include any writing "containing information relating to the conduct of government". RCW 42.17.020(36).
These different statutory purposes would appear to call for a different balance of the facts and factors considered in Telford, from the balance there undertaken. For example,Telford concludes that "the associations perform mainly advisoryfunctions and do not govern citizen action". Telford,95 Wn. App. at 163 (emphasis added). These conclusions seemingly would take on a different and higher level of importance in the context of public records statutes whose purpose it is to ensure that the people retain control over the institutions that do govern them, than they had in Telford. Similarly, the Telford court noted that the associations were not created by statute, and they existed before the Legislature chose to authorize them to perform certain functions. Id. at 165.[5] These facts may be more important in determining whether the associations are the functional equivalents of "public agencies" in the context of public records statutes designed to protect the people's control over government institutions that they created than in the context of campaign finance statutes intended to prohibit the expenditure of public funds to support private political campaigns. Id. at 166.
In addition, whether the public records provisions of the Act could be effectuated without finding the associations to be "functional equivalents" of agencies would also seemingly be a relevant consideration, as courts interpret the term "agency" in any given statute, in order to effectuate the statute's purposes. As the Telford court concluded, the only members of WSAC and WACO are county officials, and the function of the associations largely "is statewide coordination of county administrative programs".Id. at 165. In this respect, it seems likely that virtually all (if not all) of the records of the associations relating to governing also would be records "used or retained" by the counties, and thus would be available upon request to those public agencies, absent a relevant exception under the Act. RCW42.17.020(36), .260. The same would seem to be true with respect to the consultative and other functions of the associations referenced in Telford. Telford, 95 Wn. App. at 163-64.
In any event, based on the limited and particularized facts available concerning WSAC and WACO from Telford, we are not in a position to apply a functional equivalence analysis for purposes of the public records provisions of the Act.
2. Are the Association of Washington Cities (AWC) and theWashington Public Ports Association (WPPA) subject to the publicrecords provisions of the Public Disclosure Act, RCW 42.17.250through 42.17.348?
Your second question essentially is the same as your first but relates to the Association of Washington Cities and the Washington Public Ports Association, rather than to WSAC and WACO. As with WSAC and WACO, the statutes referring to these associations do not provide a definitive answer to your question. RCW 53.06.030 empowers the port district commissions in this state to designate the WPPA as a coordinating agency, but does not confer governmental power on the WPPA itself. Additionally, RCW53.06.090 provides that "the legislature recognizes that any nonprofit corporation created or re-created for the purposes of this chapter, is a private nonprofit corporation contracting to provide services to which port districts may subscribe." Several statutes provide for the WPPA to nominate persons for committees or boards. See, e.g., RCW 47.06A.030; RCW 47.26.121. Similarly, certain statutes provide for the AWC to nominate or appoint persons for committees or boards. See, e.g., RCW 90.58.170
(shorelines hearings board) and RCW 43.20A.685 (state council on aging). Again, as noted above, a number of statutes also provide for similar nominations by decidedly private organizations.
Nor are we in a position to weigh this question in the context of relevant factual circumstances. Thus, for the same reasons that we have explained in responding to your first question, we are not in a position to answer this question with an appropriate degree of confidence in the analysis that we would provide. Indeed, we have considerably less necessary factual information before us with respect to AWC and WPPA than with respect to the associations who are the subject of your first inquiry, as we do not even have the benefit of factual determinations of the sort made by Telford
concerning WSAC and WACO. Accordingly, any analysis of the status of the WPPA or of the AWC in a public records context must await the development of an actual factual situation to which the principles set forth in the statute, as interpreted in Telford, might be applied.
We trust that this will be of assistance to you.
Sincerely,
JONATHON GURISH Assistant Attorney General
[1] There is little Washington case law to draw on in analyzing this issue. We note that review of this case was denied by our Supreme Court, and no Washington appellate courts have squarely dealt with the issue of whether a private corporation could be subject to the Public Records Act.
[2] Given the context, we interpret the court's use of the term Public Records Act or Public Disclosure Act to be synonymous with the campaign finance portions of that Act. These terms are frequently used interchangeably. Am. Civil Liberties Union ofWash. v. Blaine Sch. Dist. 503, 95 Wn. App. 106, 108 n. 1,975 P.2d 536, 538 n. 1 (1999).
[3] In one case, the Washington Supreme Court held that a statute that limited members of a chiropractic examining board and disciplinary board to persons either appointed by or nominated by two chiropractic societies violated due process rights of chiropractors not members of either society where not all chiropractors were members of the named societies, and adequate safeguards and standards to guide in licensing and disciplinary practices were not provided by the Legislature. United Chiro. ofWash., Inc. v. State, 90 Wn.2d 1, 578 P.2d 38 (1978). However, the Court stopped short of holding that the power to appoint or nominate can never be delegated to private persons or organizations.
[4] Cases interpreting FOIA are relevant in interpreting Washington's Act. Dawson v. Daly, 120 Wn.2d 782, 791-92,845 P.2d 995 (1993).
[5] Telford does note that the associations, while not created by acts of the Legislature, were created by local public officers acting in their official capacities. Telford,95 Wn. App. at 165. The origin of an association, and its relationship to the local governments who are its members, might or might not be an important factor in analyzing whether an association's records are open to public inspection and copying. The facts of a particular case might well determine the outcome of the analysis.