[No. 44104. En Banc. November 10, 1976.]

SALSTROM'S VEHICLES, INC., *Respondent*, v. THE DEPARTMENT OF MOTOR VEHICLES, *Appellant*.

*Slade Gorton, Attorney General,* and *R. Timothy Oliver* and *Susan Martin, Assistants,* for appellant.

*Barney & McAdams* and *Robert L. McAdams,* for respondent.

*John P. Lycette, Jr.,* and *John T. Petrie,* on behalf of State Automobile Dealers Association, amici curiae.

UTTER, J.—The Department of Motor Vehicles appeals from a superior court judgment invalidating portions of the motor vehicles dealers' license statute, RCW 46.70. At issue is the constitutionality of provisions requiring dealers selling or brokering new or current-model vehicles with factory warranties to have a current service agreement with the vehicle manufacturer. We hold the challenged provisions constitutional and reverse the trial court judgment.

Respondent Salstrom's Vehicles is a Washington corporation engaged in the business of obtaining vehicles of all makes for private persons from new car dealers operating under franchise agreements with auto manufacturers. Respondent currently holds a vehicle dealer's license from appellant Department of Motor Vehicles, but is not franchised by any manufacturer. Respondent's customers are primarily individuals belonging to professional organiza-

tions. It does not maintain a stock of vehicles and does not operate a sales lot.

Prior to 1973, RCW 46.70.041 required an applicant for a vehicle dealer's license to submit a copy of a current service agreement with a manufacturer only if the applicant intended *to sell* vehicles with a factory warranty. Laws of 1967, 1st Ex. Sess., ch. 74, § 6. The service agreement must require the dealer-applicant to perform or arrange for the repair or replacement work required of the manufacturer by the factory warranty. *See* RCW 46.70.041(2)(e). In 1973 the legislature amended this section to require such a service agreement of applicants seeking "to sell, to exchange, to offer, to broker, to auction, to solicit or to advertise" new or current model vehicles with factory warranties.[1] This same amendment authorizes the revocation of a vehicle dealer's license if the dealer sells, exchanges, offers or brokers such vehicles with factory warranties and does not have a valid, written service agreement with the manufacturer. RCW 46.70.101(1)(a)(vii).

Customers of respondent receive factory warranties with

---

[1]RCW 46.70.041, as amended by Laws of 1973, 1st Ex. Sess., ch. 132, § 5, provides in pertinent part:

"Application for license—Contents. (1) Every application for a vehicle dealer or a vehicle salesman's license shall contain the following information to the extent the same is applicable to the applicant:

". . .

"(2) If the applicant is a vehicle dealer:

"(a) Name or names of new vehicles the vehicle dealer wishes to sell;

"(b) The names and addresses of each manufacturer from whom the applicant has received a franchise;

"(c) Whether the applicant intends to sell used vehicles, and if so, whether he has space available for servicing and repairs;

". . .

"(e) A copy of a current service agreement with a manufacturer, or distributor for a foreign manufacturer, requiring the applicant, upon demand of any customer receiving a new vehicle warranty to perform or arrange for, within a reasonable distance of his established place of business, the service repair and replacement work required of the manufacturer or distributor by such vehicle warranty: *Provided*, That this requirement shall only apply to applicants seeking to sell, to exchange, to offer, to broker, to auction, to solicit or to advertise new or current-model vehicles with factory or distributor warranties;"

the vehicles they purchase. However, respondent does not have a current service agreement with any manufacturer and does not maintain facilities to perform warranty work. It was undisputed that current service agreements can be obtained by other than franchised dealers only in very limited situations. Respondent has entered into written agreements with each of the many franchised dealers from which it obtains vehicles. These agreements recite that respondent is a "distributor agent" for the franchised dealer and that vehicles will be warranted in the name of respondent's customers. Respondent's business conduct is not subject to the control of any franchised dealer.

Pursuant to RCW 34.04.080, respondent petitioned the Department of Motor Vehicles for a binding declaratory ruling as to the applicability of RCW 46.70.041 and .101 to respondent and the validity of those provisions as applied to respondent. In May 1974, appellant ruled that respondent was subject to these statutory provisions and that its vehicle dealer's license "is subject to revocation in that [it] sells, exchanges, offers, brokers, auctions, solicits or advertises new or current-model vehicles to which factory new-vehicle warranties attach and [it] does not have a current written service agreement with the manufacturers of those vehicles."

Respondent sought review of appellant's ruling in superior court. The court concluded as a matter of law that the challenged provisions did not apply equally to all members of the class of dealers selling new or current-model vehicles covered by manufacturers' warranties inasmuch as very few nonfranchised dealers could obtain the required service agreement and, therefore, the statute violated the equal protection and privileges and immunities clauses. The court also held that the act as amended in 1973 unconstitutionally delegated to manufacturers the power to determine the recipients of vehicle dealers' licenses in this state.

The trial court entered conclusions of law finding that respondent is a "motor vehicle dealer" as defined by RCW

46.70.011(3)(a),[2] and is engaged in "brokering" new or current-model vehicles with factory warranties within the meaning of RCW 46.70.041(2)(e). The court further concluded that respondent was not an agent of the franchised dealers from which it obtains vehicles. No error is assigned to these conclusions of law and, hence, these issues will not be considered on appeal. ROA I-43; *see Puget Sound Plywood, Inc. v. Mester,* 86 Wn.2d 135, 141, 542 P.2d 756 (1975). *See also* RAP 12.1 (effective July 1, 1976).

■ In *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974), we reviewed the principles applicable to constitutional attacks on economic and business regulations:

> [One] limitation upon our exercise of judicial review is the heavy presumption of constitutionality accorded a legislative act. . . . Every state of facts sufficient to

[2]RCW 46.70.011 provides in pertinent part:

"Definitions. As used in this chapter:

". . .

"(3) 'Vehicle dealer' means any person, firm, association, corporation or trust, not excluded by subsection (4) of this section, engaged in the business of buying, selling, exchanging, offering, brokering, leasing with an option to purchase, auctioning, soliciting, or advertising the sale of new, or used vehicles: *Provided,* That vehicle dealers shall be classified as follows:

"(a) A 'motor vehicle dealer' shall be a vehicle dealer that deals in new and used motor vehicles;

"(b) A 'mobile home and travel trailer dealer' shall be a vehicle dealer that deals in mobile homes or travel trailers, or both;

"(c) A 'miscellaneous vehicle dealer' shall be a vehicle dealer that deals in motorcycles and/or vehicles other than motor vehicles or mobile homes and travel trailers.

"(4) The term 'vehicle dealer' does not include:

"(a) Receivers, trustees, administrators, executors, guardians, or other persons appointed by, or acting under a judgment or order of any court; or

"(b) Public officers while performing their official duties; or

"(c) Employees of vehicle dealers who are engaged in the specific performance of their duties as such employees; or

"(d) Any person engaged in an isolated sale of a vehicle in which he is the registered or legal owner, or both, thereof.

"(e) Any person, firm, association, corporation or trust, engaged in the selling of equipment other than vehicles, used for agricultural or industrial purposes."

sustain a classification which reasonably can be conceived of as having existed when the law was adopted will be assumed. . . . A statute's alleged unconstitutionality must be proven "beyond all reasonable doubt" before it may be struck down.

These principles are more than rules of judicial convenience. "They mark the line of demarcation between legislative and judicial functions." *Lenci v. Seattle,* 63 Wn.2d 664, 668, 388 P.2d 926 (1964).

Because the challenged portions of RCW 46.70 tend to promote the public welfare and bear a reasonable relation to the accomplishment of a proper purpose, the provisions are a valid exercise of the State's police power. *See State v. Conifer Enterprises, Inc.,* 82 Wn.2d 94, 96-97, 508 P.2d 149 (1973); *Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960), *cert. denied,* 364 U.S. 932 (1961). The declared purpose of the legislature in adopting RCW 46.70 was to regulate and license vehicle manufacturers, distributors, dealers, and salesmen "in order to prevent frauds, impositions and other abuses upon [the State's] citizens and to protect and preserve the investments and properties of the citizens of this state." RCW 46.70.005. In the present case, the trial court determined, in an unchallenged finding of fact, that the purpose of the current service agreement requirement of RCW 46.70.041 is to insure that all purchasers receive a valid, enforceable warranty and, in an unchallenged conclusion of law, that this purpose is a proper objective for the exercise of the police power. This conclusion is undoubtedly correct. "The concept of the public welfare is broad and inclusive." *Berman v. Parker,* 348 U.S. 26, 33, 99 L. Ed. 27, 75 S. Ct. 98 (1954). *See also Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 39 L. Ed. 2d 797, 94 S. Ct. 1536 (1974). We have previously held that prevention of deception and fraud upon the consuming public is in the public interest. *Reesman v. State,* 74 Wn.2d 646, 651, 445 P.2d 1004 (1968).

Moreover, we can readily conceive of a state of facts which justifies the legislature's determination that the re-

quirement of a current service agreement will further the purpose of the statute. The legislature may well have concluded that warranty work will more likely be performed, and performed well, if all vehicle dealers have agreed with the vehicle manufacturers that "upon demand of any customer receiving a new vehicle warranty [the dealer will] perform or arrange for . . . the service repair and replacement work required of the manufacturer . . . by such vehicle warranty . . ." RCW 46.70.041(2)(e). Also, it was not disputed by the parties that manufacturer warranties normally change in some respect from year to year, affecting such matters as the items covered, where the service may be performed, and how the warranty may be transferred. Requiring a *current* service agreement bears a reasonable relationship to the objective of insuring proper warranty service and protecting the investment of consumers. It is not a court's function to invalidate an economic regulation on the grounds that it will probably be unsuccessful or is unwise. *State v. Laitinen,* 77 Wn.2d 130, 133, 459 P.2d 789 (1969); *Bayside Fish Flour Co. v. Gentry,* 297 U.S. 422, 428, 80 L. Ed. 772, 56 S. Ct. 513 (1936). "We do not inquire whether this statute is wise or desirable, or 'whether it is based on assumptions scientifically substantiated.' . . . Misguided laws may nonetheless be constitutional." *James v. Strange,* 407 U.S. 128, 133, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972).

 It may be contended that agreements between vehicle brokers and franchised dealers, such as those between respondent and the new car dealers in this case, would also achieve the purpose of the statute. The legislature, however, may have judged this safeguard inadequate. "The question of the desirability and effectiveness of one method of control over the other . . . gives rise to a legislative choice rather than a judicial one." *Reesman v. State, supra* at 653. It may be that the statute imposes a needless requirement.

But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement.

. . . . [T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

`Williamson v. Lee Optical of Oklahoma, Inc.,` 348 U.S. 483, 487-88, 99 L. Ed. 563, 75 S. Ct. 461 (1955).

■ Respondent argues that the State may not prohibit a legitimate business activity and that the legislature has done so in RCW 46.70.041 and .101 inasmuch as respondent is unlikely to obtain a current service agreement from a manufacturer. This court, however, has often upheld business regulations having severe economic consequences, even approving the action of the legislature in declaring an existing and previously unregulated business to be a nuisance. *See Markham Advertising Co. v. State,* 73 Wn.2d 405, 425, 439 P.2d 248 (1968); *Sittner v. Seattle,* 62 Wn.2d 834, 839, 384 P.2d 859 (1963). That a statute is unduly oppressive is not a ground to overturn it under the due process clause. *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P. R.R.,* 393 U.S. 129, 143, 21 L. Ed. 2d 289, 89 S. Ct. 323 (1968). "[T]he mere loss of profits is not a basis for declaring . . . state laws unconstitutional, cf. Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 78 L.Ed. 940 (1934)." *Palladio, Inc. v. Diamond,* 321 F. Supp. 630, 635-36 (S.D.N.Y. 1970).

Our conclusion that the challenged provisions are a valid exercise of the police power is supported by recent decisions in other jurisdictions upholding the constitutionality of statutes very similar to RCW 46.70. *Aero Motors, Inc. v. Administrator, Motor Vehicle Administration,* 274 Md. 567, 337 A.2d 685 (1975); *In re Hinesley,* 82 S.D. 552, 150 N.W.2d 834 (1967); *Louisiana Motor Vehicle Comm'n v. Wheeling Frenchman,* 235 La. 332, 103 So. 2d 464 (1958).

■ The court below agreed with respondent's contention that the requirement of RCW 46.70.041 denies respondent equal protection in that the statute does not apply equally to all members of the class of dealers providing vehicles covered by manufacturers' warranties because,

with very few exceptions, nonfranchised dealers cannot obtain current service agreements. Respondent also relies on the privileges and immunities clause of the state constitution which is given substantially the same construction as the federal equal protection clause. *See Northshore School Dist. 417 v. Kinnear*, 84 Wn.2d 685, 721, 530 P.2d 178 (1974); *State v. Perrigoue*, 81 Wn.2d 640, 641, 503 P.2d 1063 (1972). As applied to business and economic regulations, equal protection of the laws requires (1) that the legislation apply alike to all persons within a designated class, (2) that there exists a reasonable ground for distinguishing members of the class from others, and (3) that the difference in treatment be related to the purpose of the challenged statute. *Sonitrol Northwest, Inc. v. Seattle*, 84 Wn.2d 588, 589-90, 528 P.2d 474 (1974); *see Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 527-31, 520 P.2d 162 (1974); *McGowan v. Maryland*, 366 U.S. 420, 425-36, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961).

■ The trial court correctly found that the class created by RCW 46.70.041 is those dealers which sell or broker new or current-model vehicles with factory warranties attached. The first requirement noted above is satisfied here since *on its face* the statute applies equally to all members of the class; each must have a current service agreement with the manufacturer of the vehicle sold. It is true that manufacturers rarely enter into service agreements with nonfranchised dealers, such as respondent. However, the constitution does not demand that every statute have an identical effect on all members of the class created. That would be an unworkable standard, require extensive judicial investigation of facts and circumstances as they existed both before and after the legislative action, and conflict with the well-established rule "that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland, supra* at 425. RCW 46.70 embraces not only automobile dealers, but

dealers of pickup trucks, tractor-trailer trucks, motor homes, motorcycles, mobile homes and other vehicles. RCW 46.70.011(1), (2). It is inevitable that dealers of some of these vehicles will be affected differently from other members of the same class, *i.e.*, those dealing in new or current-model vehicles with factory warranties. The equal protection provisions require only similar treatment, not identical impact, on those similarly situated. To hold otherwise would paralyze the legislature in its attempt to correct social and economic wrongs.

■ There exists a reasonable ground for the distinction drawn in RCW 46.70.041. Only those dealers which provide new or current-model vehicles with factory warranties must obtain a service agreement, because it is only purchasers of such vehicles who rely upon satisfactory warranty service. " 'The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same.' " *State v. Perrigoue, supra* at 643. Because a state of facts reasonably may be conceived to justify it, the statutory discrimination of the challenged provision cannot be set aside. *See Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, supra* at 528-30. Similarly, the final requirement of the equal protection mandate in the context of economic regulation is met in this case. Treating dealers who offer vehicles with warranties differently from those who do not is clearly related to the purpose of insuring warranty work is performed and performed well. "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland, supra* at 425.

■ Respondent maintains that RCW 46.70 delegates to vehicle manufacturers the authority to determine which persons may obtain a state vehicle dealers' license in violation of the rule that the legislative power may not be delegated to private persons. *See Port of Tacoma v. Parosa*, 52 Wn.2d 181, 184, 324 P.2d 438 (1958). However, no such power has been delegated here. The issuance of dealers'

licenses is properly left to the Department of Motor Vehicles which considers arrangements voluntarily made by the business community in determining which dealers are able to properly serve consumers. Here, as in *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, supra* at 540, vehicle manufacturers are "vested only with authority to render sound business judgments." The *appearance,* but not the fact, of a delegation in this case is created by the limited number of manufacturers from whom respondent may obtain the necessary service agreement. Respondent's argument has been made against vehicle dealer licensing statutes in other states and generally rejected. In *Louisiana Motor Vehicle Comm'n v. Wheeling Frenchman, supra,* the court upheld a state statute requiring applicants for vehicle dealer licenses to submit a franchise agreement between the applicant and the manufacturer of vehicles sought to be sold. Responding to the contention that the statute delegated legisative power to manufacturers to determine who shall be a licensed dealer, the court stated, at pages 346-47:

> This argument is illusive but we think it unsound. Nothing has been delegated, in our estimation; the Legislature has simply, under its police power, provided a condition upon which the granting of a license shall depend. No legislative power has been delegated to the motor vehicle manufacturer to select the person or persons it chooses to be its dealer or dealers, as the Legislature has not been invested with any such power. The right of the manufacturer to choose its dealers is merely the right of the freedom of contract. Thus, the asserted delegation of legislative power is not in reality a delegation at all. It is purely the exercise of a legislative discretion in the fixing of standards for qualification as a new car dealer under the law.

*Accord, Aero Motors, Inc. v. Administrator, Motor Vehicle Administration, supra* at 592.

Judgment reversed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.