[No. 45045.   En Banc.   April 27, 1978.]

UNITED CHIROPRACTORS OF WASHINGTON, INC., *Appellant,*
v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

*Davis, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson,* by *John C. Kouklis,* for appellant.

*Slade Gorton, Attorney General,* and *John H. Keith, Assistant,* for respondents.

UTTER, J.—The United Chiropractors of Washington brought a declaratory action to have the methods of appointment found in the two statutes, RCW 18.25.015 and RCW 18.26.040, found unconstitutional. The Superior Court rejected appellant's challenge and held that the statutes are constitutional. We reverse that ruling.

The chiropractors of this state do not belong to a unified, single society. There are approximately 500 chiropractors in the state. One hundred belong to the Chiropractor Society of Washington (CSW) and 170 belong to the Washington Chiropractic Association (WCA). Some of the balance belong to the recently–formed appellant organization, while many belong to no organization at all.

RCW 18.25.015[1] gives to the WCA "and/or" the CSW the authority to submit five names to the Governor from

---

[1] "There is hereby created a state board of chiropractic examiners consisting of three practicing chiropractors to conduct examinations and perform duties as provided in this chapter.

"Members of the board shall be appointed by the governor from a list of five or more names submitted by the Washington Chiropractors Association, Inc. and/or the Chiropractic Society of Washington. At the time of their appointment, and during their tenure of office, the members of the board must be actual residents of Washington, licensed to practice chiropractic in this state, and must be citizens of the United States.

which the Governor must appoint the 3–member State Board of Chiropractic Examiners. RCW 18.26.040[2] provides that the 7–member Washington State Disciplinary Board for Chiropractors is to be composed of three members appointed by the WCA, three by the CSW, and one member who shall be the Director of the Department of Motor Vehicles or his designee. No provision is made for any governmental officer's review or approval of the selections made by either organization. Actual appointments have been limited to members of the CSW and WCA, although the statutes do not prohibit appointment of nonmembers.

Although there are differences in the methods of appointment established by RCW 18.25.015 and 18.26.040, we find no legal distinction on the basis of these differences. RCW 18.26.040 provides for direct appointment by

---

"In order that the term of one member shall expire each year, first members appointed shall serve one for a term of three years, one for a term of two years, and one for a term of one year; thereafter appointments shall be for a term of three years. Vacancies shall be filled by the governor as in the case of original appointment, such appointee to hold office for the remainder of the unexpired term." RCW 18.25.015.

[2] "There is hereby created the Washington state chiropractic disciplinary board to be composed of three members to be named by the Washington Chiropractors Association, Incorporated and three members to be named by the Chiropractic Society of Washington and one additional member who shall be the director of the department of motor vehicles or his designee from the department of motor vehicles. Initial members shall be named within thirty days after the effective date of this chapter, whose names and addresses shall be promptly sent to the director of motor vehicles, and such board shall meet and organize at a time and place to be determined by the director of the department of motor vehicles within sixty days after the effective date of this chapter and after written notice to the named members of such date and place.

"The director of the department of motor vehicles or his designee shall designate the terms of the initial members of the disciplinary board. For terms beginning January 1, 1975, one initial member from each of the two groups, the Washington Chiropractors Association, Incorporated, and the Chiropractic Society of Washington, shall be designated for a one–year term, one member from each group shall be designated for a two–year term, and one member from each group shall be designated for a three–year term.

"Thereafter, each of said groups shall, annually, designate the members of the board who shall succeed to said position upon the expiration of said initial term. Such subsequent designations shall be for a term of three years, except the director or his designee from the department of motor vehicles." RCW 18.26.040.

private organizations without action by any elected official, while 18.25.015 requires the Governor's action to select from among a larger group nominated by the private organizations. The Governor *must,* however, select only those persons receiving the approval of the organizations. Thus, in legal effect, the private bodies make the appointments under the procedure established in RCW 18.25.015 just as clearly as—though perhaps less directly than—they do under RCW 18.26.040. The two statutes may therefore be evaluated under the same analysis, without distinguishing between them on the basis of the appointment differences. Several grounds are urged in support of appellant's contention that these statutory provisions are invalid, but we address only appellant's claim that these statutes unconstitutionally delegate governmental power to private bodies, as this issue is dispositive.

This court has previously held unconstitutional the legislature's delegation of authority to a private association to control licensing of physicians through granting or refusing accreditation to schools of medicine. *State ex rel. Kirschner v. Urquhart,* 50 Wn.2d 131, 310 P.2d 261 (1957). That decision rested upon the court's conclusion that "[l]egislative power is nondelegable." *Kirschner,* at 135. Since that time, however, we have recognized that this rule unreasonably restricts the alternatives available to the legislature in approaching a problem or issue. In place of the rule that legislative power is nondelegable, we have substituted a rule that delegation is permissible when (1) the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretion. *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). *See also Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 553 P.2d 1316 (1976); *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320 (1976); *Yakima County Clean Air Authority v. Glascam Builders, Inc.,* 85 Wn.2d 255, 534 P.2d 33 (1975).

These cases have demonstrated a movement somewhat in the direction of the approach advocated by Kenneth Culp Davis. *See* K. Davis, *Administrative Law Treatise* § 2.00–2.17 (1958, Supp. 1970); K. Davis, *Administrative Law of the Seventies* § 2.00–2.17 (Supp. 1976). However, this court has not had occasion since adopting this new standard to consider its applicability to legislation involving delegation to private parties.

Delegation to a private organization raises concerns not present in the ordinary delegation of authority to a governmental administrative agency. The courts of other states have found a violation of the basic governmental framework in such delegations. In *Hetherington v. McHale,* 458 Pa. 479, 329 A.2d 250 (1974), the Pennsylvania Supreme Court invalidated a legislative act in which the legislature had provided for allocation of certain funds collected pursuant to a harness racing act by a committee including some members designated by a private organization. The court observed, at page 484:

A fundamental precept of the democratic form of government imbedded in our Constitution is that the people are to be governed only by their elected representatives. . . .

In fact, the people of this Commonwealth, through their duly elected representatives, have no voice in the appointments of those selected by these three private groups. No opportunity is provided for the public interest to assert itself. Instead, private groups responsive only to the interests of their membership choose those charged with performing governmental functions. . . .

We are equally concerned with the preservation of the "essential concepts of a democratic society" when the power delegated is the authority to make appointments to a committee exercising governmental functions. The power to select those who make public decisions is too vital a part of our scheme of government to be delegated to private groups.

In *Commonwealth ex rel. Kane v. McKechnie,* 467 Pa. 430, 433, 358 A.2d 419 (1976), the Pennsylvania court expanded its earlier decision. In invalidating a statutory

6

provision mandating that the elected president of the State Dental Society was automatically a member of the State Dental Council and Examining Board, the court noted:

> The decision in *Hetherington* was not limited to the governmental function of expending funds, but encompassed all governmental functions. The Board exercises significant governmental functions, including among other things, the establishment of educational standards for dentists, investigation and approval of dental schools, licensing of dentists and dental hygienists, conducting of state dental examinations prior to licensing, and to investigate, prosecute, and discipline those guilty of illegal dental practices.

*State ex rel. James v. Schorr,* 45 Del. 18, 65 A.2d 810 (1948) and *Opinion of the Justices,* 337 Mass. 777, 150 N.E.2d 693 (1958) reflect similar concerns.

The decisions in the above cases hold delegation to a private party unconstitutional without identifying particular constitutional provisions which have been violated, or by citing provisions relating generally to separation of state governmental powers, and to powers of appointment or legislation. In essence, these courts have set forth a generalized, structural objection to delegations to private parties. There is a need to be more specific in this case.

The basic test which this court has adopted with respect to delegation in general can be applied to private delegation, at least under the facts here. The second component of the test set forth in *Barry & Barry, Inc. v. Department of Motor Vehicles, supra,* is applicable here and this delegation violates the constitutional due process rights of those chiropractors who do not belong to the legislatively favored organizations. The procedural safeguards which exist in this scheme are inadequate to control arbitrary administrative action and abuse of discretion in licensing and disciplining of chiropractors not belonging to the favored groups. As stated in *Group Health Ins. v. Howell,* 40 N.J. 436, 445, 193 A.2d 103 (1963), wherein the New Jersey Supreme Court invalidated a delegation of power to the State Medical Society to approve the trustees

of medical service corporations, "We think such a power to determine who shall have the right to engage in an otherwise lawful enterprise may not validly be delegated by the Legislature to a private body which, unlike a public official, is not subject to public accountability, at least where the exercise of such power is not accompanied by adequate legislative standards or safeguards whereby an applicant may be protected against arbitrary or self–motivated action on the part of such private body."

Our due process objections to these particular statutes is based on several factors. One such factor is the nature of the appointive power itself. The private organizations to which the appointment power is delegated are subject to few standards in selecting the members of the two boards. As a result, each legislatively favored organization may make its selections based solely upon its potential appointees' ability and inclination to advance that group's private interests and reflect only that group's opinions and beliefs regarding chiropractic practice. This may be accomplished without any effective power of elected officials to veto or disallow the selections made, and without providing non-member chiropractors any means of objecting to or challenging the appointees who will govern their profession. Important also is the nature of the power exercised by the board once the private organizations have made the appointments. The statutes vest the boards with the power to make individualized, quasi–judicial decisions, rather than limiting their role to a generalized supervisory or advisory capacity. Appeals from the decisions of the boards are either not provided for (RCW 18.25) or provided for under general administrative review standards (RCW 18.26), thus restricting judicial control and supervision of the boards. The boards may, without significant interference, advance the pecuniary interests of the members of the favored groups through their licensing and disciplinary practices and standards. In sum, the appointment powers of the favored groups, coupled with the power of the boards once appointments are made, constitute due process defects

in the statutory procedures. *See* Liebmann, *Delegation to Private Parties in American Constitutional Law,* 50 Ind. L.J. 650, 717–18 (1975). The fact that neither the CSW nor the WCA has ever selected as a board member any person not a member of the appointing group certainly under-scores the potential for entrenchment and self–serving domination by the favored groups, even if it falls short of establishing this result in fact.

As stated in *Blumenthal v. Board of Medical Examiners,* 57 Cal. 2d 228, 236, 368 P.2d 101, 18 Cal. Rptr. 501 (1962), wherein the California Supreme Court struck down a law allowing already–licensed dispensing opticians to control licensing of new opticians, "Delegated power must be accompanied by suitable safeguards to guide its use and to protect against its misuse." The statutes under attack here, as they relate to methods of appointment, violate this prin-ciple and offend both federal and state constitutional due process standards.

Our decision regarding delegation renders unnecessary decisions on appellant's other contentions; we do not reach claims based upon privileges and immunities provisions of the state and federal constitutions and claims based upon equal protection grounds. Appellant's claim that the stat-utes under attack here violate equal protection because they favor some chiropractors over others would pose a particularly difficult question for resolution. The fact that appellant was not in existence at the time this legislation was passed, and that the legislature in establishing the statutory scheme included all organized groups existing at that time, presents the strongest argument in opposition to that claim.

Reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied October 27, 1978.