**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 13, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 13, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF WASHINGTON, a Washington Nonprofit Corporation; ASSOCIATED BUILDERS AND CONTRACTORS OF WESTERN WASHINGTON, INC., a Washington Nonprofit Corporation; INLAND PACIFIC CHAPTER OF ASSOCIATE BUILDERS AND CONTRACTORS, INC., a Washington Nonprofit Corporation; and INLAND NORTHWEST AGC, INC., a Washington Nonprofit Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 100258-1<br><br>En Banc<br><br>Filed: October 13, 2022 |
| Respondents, | ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON; JAY INSLEE, Governor; JOEL SACKS, Director of Washington State Department of Labor and Industries; and JIM CHRISTENSEN, Washington State Department of Labor and Industries Program Manager and Industrial Statistician, Prevailing Wage Program; in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Petitioners. | ) ) | |

*Associated General Contractors et al. v. State et al.,* No. 100258-1

WHITENER, J.—This case concerns whether Substitute Senate Bill (SSB) 5493,[1] constitutes an unconstitutional delegation of legislative authority. SSB 5493 amended RCW 39.12.015 to modify how the Department of Labor and Industries (L&I) industrial statistician calculates prevailing wage rates for public works projects. The revised statute requires the industrial statistician to adopt the prevailing wage from whichever collective bargaining agreement (CBA) covering work in a particular county has the highest wages, if such a CBA exists.

Associated General Contractors of Washington, Associated Builders and Contractors of Western Washington Inc., Inland Pacific Chapter of Associate Builders and Contractors Inc., and Inland Northwest AGC Inc. (collectively AGC), filed suit against the State of Washington; Governor Jay Inslee; the director of L&I, Joel Sacks; and the industrial statistician, Jim Christensen, in their official capacities (collectively State), for declaratory and injunctive relief, arguing that requiring the industrial statistician to use the wages from CBAs constitutes an unconstitutional delegation of legislative authority. Both parties moved for summary judgment.

The superior court granted the State's cross motion for summary judgment, holding that SSB 5493 is constitutional, and dismissed the case. The Court of Appeals reversed and held that SSB 5493 is an unconstitutional delegation of legislative authority holding that the amendments have neither the standards nor

---

[1] SUBSTITUTE S.B. 5493, 65th Leg., Reg. Sess. (Wash. 2018).

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adequate procedural safeguards as required by the two-part test set forth in *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 163-64, 500 P.2d 540 (1972).

We reverse the Court of Appeals. SSB 5493 is not an unconstitutional delegation of legislative authority because it provides standards and procedural safeguards under the test in *Barry & Barry*. The legislature has made a policy decision to adopt the highest CBA wage rate and has directed the L&I industrial statistician to identify the highest CBA wage rate and adopt it as the prevailing wage. In addition there are procedural safeguards in related statutes and inherent in the collective bargaining process that protect against arbitrary administrative action or abuse of discretionary power. Accordingly, we remand to the Court of Appeals for consideration of the remaining issue not addressed because of its disposition in this case.

FACTS AND PROCEDURAL HISTORY

I.      Prevailing Wage Calculations

"The prevailing wage act was designed to protect employees on public works projects and preserve local wages." *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 159 Wn.2d 868, 880, 154 P.3d 891 (2007) (plurality opinion). "Thus, 'it is the worker, not the contractor, who is the intended beneficiary of the' act." *Id*. (quoting *Heller v. McClure & Sons, Inc.*, 92 Wn. App. 333, 338, 963 P.2d 923 (1998)).

3

*Associated General Contractors et al. v. State et al.,* No. 100258-1

"All determinations of the prevailing rate of wage shall be made by the industrial statistician of the department of labor and industries." RCW 39.12.015(1). Under RCW 39.12.010(1), "prevailing rate of wage" is defined as

> the rate of hourly wage, usual benefits, and overtime paid in the locality, as hereinafter defined, to the majority of workers, laborers, or mechanics, in the same trade or occupation. In the event that there is not a majority in the same trade or occupation paid at the same rate, then the average rate of hourly wage and overtime paid to such laborers, workers, or mechanics in the same trade or occupation is the prevailing rate. If the wage paid by any contractor or subcontractor to laborers, workers, or mechanics on any public work is based on some period of time other than an hour, the hourly wage is mathematically determined by the number of hours worked in such period of time.

The "locality" is "the largest city in the county wherein the physical work is being performed." RCW 39.12.010(2). Further, "[i]n establishing the prevailing rate of wage under RCW 39.12.010, 39.12.015, and 39.12.020, all data collected by the department of labor and industries may be used only in the county for which the work was performed." RCW 39.12.026(1).

Under this original framework the industrial statistician and his team conducted wage surveys by sending surveys to all businesses engaged in the work in Washington State. The surveys were used "to gather . . . market data regarding the wages paid to workers in various classifications and the hours of their labor." Clerk's Papers (CP) at 1839. Then they would systemize the data from wage survey responses and CBAs and check the data for accuracy, looking for any outliers or data

*Associated General Contractors et al. v. State et al.,* No. 100258-1

that raised questions. The industrial statistician would then determine the majority

or average rate by statistical estimation. *See* WAC 296-127-019 (detailing current

survey and statistical estimation process). The industrial statistician posts the

prevailing wages online twice per year. CP at 2119. According to the most recent

survey in 2010, a "union Laborer wage was reported to be paid for the majority of

hours in 38 of Washington's 39 counties." *Id*. at 2122.

In 2018 the legislature passed SSB 5493, which modified RCW 39.12.015 and

the process by which the industrial statistician determines the prevailing wage.

Under the amendments,

> (2) Notwithstanding RCW 39.12.010(1), the industrial statistician shall establish the prevailing rate of wage by adopting the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction established in collective bargaining agreements for those trades and occupations that have collective bargaining agreements. For trades and occupations with more than one collective bargaining agreement in the county, the higher rate will prevail.
>
> (3) For trades and occupations in which there are no collective bargaining agreements in the county, the industrial statistician shall establish the prevailing rate of wage as defined in RCW 39.12.010 by conducting wage and hour surveys. In instances when there are no applicable collective bargaining agreements and conducting wage and hour surveys is not feasible, the industrial statistician may employ other appropriate methods to establish the prevailing rate of wage.

LAWS OF 2018, ch. 248, § 1 (underlining omitted). Accordingly, under the

amendments, the industrial statistician is required to adopt as the prevailing wage

the highest rate as set forth in a CBA, regardless of the number of employees covered

5

*Associated General Contractors et al. v. State et al.,* No. 100258-1

or the hours worked under the CBA, and will engage in wage surveys only in counties/occupations where there are no applicable CBAs.

II.     Procedural History

AGC filed a complaint for declaratory judgment and injunctive relief, alleging that SSB 5493 is unconstitutional because it violates the nondelegation doctrine, violates due process, violates the equal protection clauses, and violates article II, section 37 of the Washington Constitution. The trial court denied the motion for a preliminary injunction.

AGC and the State filed cross motions for summary judgment. The court granted the State's motion for summary judgment. AGC appealed.

The Court of Appeals held that SSB 5493 violates the nondelegation doctrine because it does not contain adequate standards or guidelines or adequate procedural safeguards as required in *Barry & Barry.*[2] *Associated Gen. Contractors of Wash.v. State*, 19 Wn. App. 2d 99, 102, 112, 494 P.3d 443 (2021) (*AGC*). The court found the statute unconstitutional and reversed the order granting summary judgment in

---

[2]Accordingly, the Court of Appeals declined to decide the issue of whether RCW 39.12.015(3)(a) violates article II, section 37 of the Washington Constitution. *Associated Gen. Contractors of Wash. v. State*, 19 Wn. App. 2d 99, 101 n.4, 494 P.3d 443 (2021).   The Court of Appeals also declined to address the due process and equal protection issue for deficient briefing. *Id*. at 101 n.3.

*Associated General Contractors et al. v. State et al.,* No. 100258-1

favor of the State. *Id*. The State appealed, and this court granted review.[3] 198 Wn.2d 1032 (2022).

ANALYSIS

I.    Standard of Review

When reviewing a summary judgment order, "[w]e engage in the same inquiry as the superior court." *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id*. (citing CR 56(c)).

We presume that statutes are constitutional, and the party challenging the constitutionality of the statute bears the burden of proving unconstitutionality beyond a reasonable doubt. *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2000). "This standard is met if argument and research show that there is no reasonable doubt that the statute violates the constitution." *Id*. "'Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.'" *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008) (quoting *State v. Reyes*, 104 Wn.2d 35, 41, 700 P.2d 1155 (1985)).

---

[3] Washington State Building and Construction Trades Council filed an amicus brief in support of the State's petition for review and another in support of the State after we granted review. International Union of Operating Engineers, Local 302 and Washington and Northern Idaho District Council of Laborers each filed amicus briefs in support of the State.

7

*Associated General Contractors et al. v. State et al.,* No. 100258-1

II.    Delegation of Legislative Authority

Under article II, section 1 of the Washington Constitution, "[t]he legislative authority of the state of Washington shall be vested in the legislature." *See also State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020). "[I]t is unconstitutional for the Legislature to abdicate or transfer its legislative function to others." *Brower v. State*, 137 Wn.2d 44, 54, 969 P.2d 42 (1998).

> The legislature, however, may delegate the authority to make decisions involving administrative or professional expertise, which are necessary to carry out the purpose of the act. The general rule is that the constitutional prohibition against delegation of legislative power does not preclude delegation to administrative offices or boards of *the power to determine some fact or state of things upon which application of the law is made to depend*, provided the law enunciates standards by which the officers or boards must be guided.

*Wash. Water Power Co. v. Wash. State Hum. Rts. Comm'n*, 91 Wn.2d 62, 65-66, 586 P.2d 1149 (1978) (emphasis added).

Looking at article II, section 1 of the Washington Constitution and its federal counterpart, article I, section 1 of the United States Constitution,[4] we opined that

> these provisions . . . mean only that legislative power is delegated initially and fundamentally to the legislative bodies. We believe that one of the legislative powers granted by these provisions is *the power to determine the amount of discretion an administrative agency should exercise in carrying out the duties granted to it by the legislature*. To construe these provisions as confining the exercise of legislative power

---

[4] Article I, section 1 of the United States Constitution reads, "All legislative powers herein granted shall be vested in a congress of the United States . . . ."

8

to the legislative bodies, would be to read them as limitations of power rather than as grants of power.

*Barry & Barry*, 81 Wn.2d at 162 (emphasis added and omitted). Accordingly, the legislature has the power to choose the amount of discretion it grants to an administrative agency when carrying out legislative duties, subject to constitutional requirements.

In *Barry & Barry,* this court adopted a two-part test for the constitutionality of a delegation of legislative authority to an administrative agency of the State. *Id*. at 163-64. "First, the legislature must provide standards or guidelines which indicate in general terms what is to be done and the administrative body which is to do it." *Id*. at 163.

> Second, adequate procedural safeguards must be provided, in regard to the procedure for promulgation of the rules and for testing the constitutionality of the rules after promulgation. Such safeguards can ensure that administratively promulgated rules and standards are as subject to public scrutiny and judicial review as are standards established and statutes passed by the legislature.

*Id*. at 164 (citation omitted). Said another way, the procedural safeguards "*exist to control arbitrary administrative action and any administrative abuse of discretionary power*." *Id*. at 159. This marked a shift away from the more stringent test that required much more specificity.[5]

---

[5] "We have previously held that: 'It is not unconstitutional for the legislature to delegate administrative power. In so doing, the legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"Delegation to a private organization raises concerns not present in the ordinary delegation of authority to a governmental administrative agency." *United Chiropractors of Wash., Inc. v. State*, 90 Wn.2d 1, 5, 578 P.2d 38 (1978). Mirroring *Barry & Barry*, "the legislature may grant regulatory authority to private parties only if proper standards, guidelines, and procedural safeguards exist." *Ent. Indus. Coal. v. Tacoma-Pierce County Health Dep't*, 153 Wn.2d 657, 664, 105 P.3d 985 (2005).

### A.     Private Party Delegation

The parties disagree as to whether the delegation in this case is to the industrial statistician or whether it represents a *de facto* delegation to the private parties negotiating the CBAs. The Court of Appeals appears to conclude, without analysis, that SSB 5493 is a delegation to private parties. *See AGC*, 19 Wn. App. 2d at 109.

The State contends that there is no private party delegation in this case because the legislature has directed that the industrial statistician, not private parties, determine the wages and that the industrial statistician uses information only from the CBAs. Pet'rs' Suppl. Br. at 23. Further, the CBAs are negotiated not for the purpose of setting the prevailing wage rate but, instead, to govern all aspects of the employment relationship between the parties to the CBA. *Id*. We agree with the State.

---

so doing, by prescribing reasonable administrative standards.'" *Barry & Barry*, 81 Wn.2d at 158 (quoting *Keeting v. Pub. Util. Dist. No. 1 of Clallam County*, 49 Wn.2d 761, 767, 306 P.2d 762 (1957)).

*Associated General Contractors et al. v. State et al.,* No. 100258-1

The State primarily relies on *Salstrom's Vehicles, Inc. v. Department of Motor Vehicles*, 87 Wn.2d 686, 555 P.2d 1361 (1976), for the proposition that the State can use information from nonstate actors without a private delegation to said private actors. Pet'rs' Suppl. Br. at 23-24. In *Salstrom's*, this court looked at a statute that required applicants for car dealer licenses to have service agreements with a manufacturer if they were going to sell cars with a factory warranty. 87 Wn.2d at 695-96. Salstrom's Vehicles contended that this improperly delegated to the manufacturers the ability to determine which businesses could get a dealer license. *Id*. However, we held that there was no delegation to the manufacturers and that "[t]he issuance of dealers' licenses is properly left to the Department of Motor Vehicles which considers arrangements voluntarily made by the business community in determining which dealers are able to properly serve consumers." *Id*. We reasoned,

> "Nothing has been delegated, in our estimation; the Legislature has simply, under its police power, provided a condition upon which the granting of a license shall depend. No legislative power has been delegated to the motor vehicle manufacturer to select the person or persons it chooses to be its dealer or dealers, as the Legislature has not been invested with any such power. The right of the manufacturer to choose its dealers is merely the right of the freedom of contract. Thus, the asserted delegation of legislative power is not in reality a delegation at all. It is purely the exercise of a legislative discretion in the fixing of standards for qualification as a new car dealer under the law."

*Id*. at 696 (quoting *La. Motor Vehicle Comm'n v. Wheeling Frenchman*, 235 La. 332, 346-47, 103 So. 2d 464 (1958)).

11

*Associated General Contractors et al. v. State et al.,* No. 100258-1

The present case is analogous. Here, the legislature has made a policy decision that the highest CBA wage rate in a county shall be the one that prevails. Although the CBAs will inform the industrial statistician's determination of the prevailing wage, the industrial statistician is the one who ultimately determines the prevailing wage. Similar to the vehicle manufacturers, the parties to the CBA negotiations have not been delegated the authority to determine the prevailing wage. Akin to *Salstrom's*, private contract negotiations can inform the government actor's decision-making process. There is no delegation of legislative power but rather, the legislature has exercised its discretion in fixing the standards for determining the prevailing wage.

Further, out of state courts have recognized that the use of CBAs and union rates is not an unconstitutional delegation to private parties. For example, in *West Ottawa Public Schools v. Director, Department of Labor*, 107 Mich. App. 237, 245-46, 309 N.W.2d 220 (1981), the Court of Appeals of Michigan reasoned that under a similar statute,

> the statute expresses the policy that wages equal to union scale are to be paid to both union and nonunion workers on public construction projects. *The Legislature did not confer on the unions and the contractor/employers the power to set the prevailing wage rate for public contracts. It merely adopted, as the critical standard to be used by the Department of Labor in determining prevailing wage, the wage rate arrived at through a collective bargaining process which is completely unrelated to and independent of the prevailing wage statute.* The purpose of collective bargaining is not to set the wage scale for

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*public* projects but rather to set the wage scale for *all* construction projects.

> *There is a vital distinction between conferring the power of making what is essentially a legislative determination on private parties and adopting what private parties do in an independent and unrelated enterprise.*

(Most emphasis added); *see also Donahue v. Cardinal Constr. Co.*, 11 Ohio App. 3d 204, 205, 463 N.E.2d 1300 (1983) (paraphrasing the same).

In contrast, the Supreme Court of Wisconsin has decided differently. *See Wagner v. City of Milwaukee*, 177 Wis. 410, 188 N.W. 487 (1922). In *Wagner*, the court held it was an unconstitutional delegation to adopt the union wage as the prevailing wage. The court reasoned,

> This in effect declares that some body or organization outside of and independent of the common council, and other than a state or local administrative body, shall exercise the judgment required to fix and determine a prevailing wage scale. It amounts to nothing less than a surrender by the members of the common council of the exercise of their independent, individual judgments in the determination of a matter of legislative concern, and an agreement that if they act upon the subject at all the determination of such outside body rather than their own shall control. There is no discretion left with the common council as to the scale; if it fixes any, it must fix that scale determined by the unions. The action and judgment of determining the wage scale is that of the unions, not that of the common council. The power to exercise such legislative function is exclusively in the common council, and their duty and obligation as representatives of the people to so exercise it is co-extensive with the power itself.

*Id*. at 416-17.

*Associated General Contractors et al. v. State et al.,* No. 100258-1

We agree with the Court of Appeals of Michigan. The negotiation of employment CBAs is not for the purposes of setting the prevailing wage. The legislature made a policy decision. It did not confer on the parties to the CBAs the power to set the prevailing wage rate. Instead, the statute specifically delegates that authority to the industrial statistician.

AGC contends that "[i]n cases where an agency has no discretion to carry out the legislature's wishes, there is a *de facto* delegation to private organizations." Suppl. Br. of Resp'ts at 21. We disagree. Assuming this was a delegation without any discretion, it would still be permissible as the legislature exercising its police powers can choose to limit agency discretion to no discretion. As the State observes, "that SSB 5493 gives the statistician specific directions to follow means the statute sets clear standards for rate determinations, not that the statute includes no standards." Pet'rs' Suppl. Br. at 10. Accordingly, we hold that there is no private party delegation in the present case because the legislature delegated authority to the industrial statistician, and not to private parties contracting independent CBAs.

### B.     Standards and Guidelines

Turning to the test set forth in *Barry & Barry*, the parties disagree as to whether there are standards, guidelines, and adequate procedures under both steps. The Court of Appeals held that "[b]ecause the CBAs that the industrial statistician must rely on in setting a prevailing wage did not exist at the time the legislature

14

*Associated General Contractors et al. v. State et al.,* No. 100258-1

passed SSB 5493, the legislature failed to provide appropriate standards for the setting of the prevailing wage." *See AGC*, 19 Wn. App. 2d at 110. We disagree with this conclusion and hold that SSB 5493 does provide clear standards that the industrial statistician must follow in determining the prevailing wage.

The Court of Appeals primarily relied on *State ex rel. Kirschner v. Urquhart,* 50 Wn.2d 131, 310 P.2d 261 (1957). In that case, this court examined the constitutionality of a statute that determined the list of acceptable foreign medical schools to practice medicine in Washington was one that was approved by various medical organizations. *Id*. at 132-33. The prior statute had "required graduation from a regular medical school, which, at the diploma date, maintained standards not less than those prescribed by the Association of American Medical Colleges." *Id*. at 132. The court held that the current statute, in contrast to the prior statute, requiring approval from various medical societies was an unconstitutional delegation because no list of accredited schools existed at the time the statute was enacted and the societies had not yet set standards to create the list of comparable foreign medical schools. *Id*. at 138. The contrast being that the legislature can set *standards* that determine which school is eligible (under the prior statute, adopting the standards of the Association of American Medical Colleges and then determining the fact of whether a school meets those standards) or they can adopt a list of schools *in existence* that a learned society has compiled and approved. However, it cannot rely

15

*Associated General Contractors et al. v. State et al.,* No. 100258-1

on a private party's future determination of a list of approved schools not in existence at the time of the enactment. *See id*. at 135 ("It would have been proper for the legislature to have enacted that accredited schools were only those on a list then in being, whether prescribed by the American Medical Association, or some other learned society; but it was not within permissible constitutional limits to define accredited institutions as those on a list not then in existence, irrespective of the standing of the society which might compile such future list.").

Worth noting, *Kirschner* was decided about 15 years before this court modified the test for the nondelegation doctrine in *Barry & Barry* and thus was premised on the notion that "[l]egislative power is nondelegable." *Id*. The State thus contends that *Kirschner* was "abrogated" by *United Chiropractors* and "recast" in *Woodson v. State*, 95 Wn.2d 257, 623 P.2d 683 (1980). Pet'rs' Suppl. Br. at 31.

In *United Chiropractors*, this court referenced *Kirschner* and concluded that it was based on the premise that legislative power is nondelegable. *United Chiropractors*, 90 Wn.2d at 4. Setting forth the *Barry & Barry* test, the court reasoned, "Since that time, however, we have recognized that this rule unreasonably restricts the alternatives available to the legislature in approaching a problem or issue." *Id*. Thus, we confirmed the more flexible evolution of the nondelegation doctrine, arguably abrogating *Kirschner* to the extent it did not follow the later *Barry & Barry* test.

16

*Associated General Contractors et al. v. State et al.,* No. 100258-1

However, in *Woodson*, this court reaffirmed the conclusion in *Kirschner*, reiterating that "the vice is not that the legislature adopts a standard of accreditation fixed by recognized medical societies, but that it defers to the adoption of standards such bodies may make in the *future*." *Woodson*, 95 Wn.2d at 261. In doing so, the court concluded that the definition of "osteopathy" and the determination of what healing procedures an osteopath can use are nondelegable powers of the legislature. Thus, the court held the legislature could not define "osteopathy" based on what colleges of osteopathy choose to teach, as that would be an unconstitutional delegation to the colleges and other associations to determine the standards of osteopathy both at the time and in the future. *Id*. at 261-62. Thus, "[s]ince an interpretation which holds a statute constitutional is to be preferred over one which renders it invalid, we conclude the 1919 legislature did not intend to redefine 'osteopathy' in unconstitutional terms." *Id*. at 261 (citations omitted). Given the similarities between *Kirschner* and *Woodson*, and that *Woodson*, a post *Barry & Barry* case, follows the reasoning in *Kirschner*, we hold that *Kirschner* has been abrogated only to the extent that it does not apply the *Barry & Barry* test.

Both *Kirschner* and *Woodson* concern the legislature delegating, to a private party, the ability to make future determinations of standards. There were no enunciated standards for the private parties to follow in either case, and the private parties were tasked with setting the standards. Both cases reference as "similar,"

17

*Associated General Contractors et al. v. State et al.,* No. 100258-1

*Wagner* and the Supreme Court of Wisconsin's holding that a prevailing wage statute that delegates authority to the unions to determine the wage rate is unconstitutional. *See Kirschner*, 50 Wn.2d at 136; *Woodson*, 95 Wn.2d at 261.

However, the present case is materially different. In contrast to *Kirschner* and *Woodson*, the legislature has not delegated any authority to private organizations. The legislature has made its policy decision that the prevailing wage rate is that of the highest CBA in a county and has delegated to the industrial statistician the authority to determine what that rate is and, if there is no CBA rate, to engage in wage surveys. The standards found in SSB 5493 are clear: the industrial statistician will establish the prevailing wage as the highest CBA wage rate in county. Thus, the industrial statistician is using independent facts to determine the highest wage — the legislature has not granted the authority to set the standards of what constitutes a prevailing wage to the private parties negotiating the contracts. The ability to determine the prevailing wage inherently grants some discretion to the industrial statistician to determine whether a CBA is valid and which CBA applies.[6] In the event there is not a CBA for a particular trade or occupation in a county, the industrial statistician engages in a wage survey to determine the prevailing wage.

---

[6] AGC focuses on the potential invalidity of CBAs because the one in the possession of the industrial statistician may or may not be signed. Suppl. Br. of Resp'ts at 8-12. The industrial statistician testified that some of the CBAs in his possession are not the original copies and are not signed, but that they are all valid. AGC has provided no evidence of any invalid CBAs that have been used to set the prevailing wages.

18

*Associated General Contractors et al. v. State et al.,* No. 100258-1

*See* WAC 296-127-019 (detailing current survey and statistical estimation process).

Accordingly, we hold that the legislature has identified standards for the industrial statistician to follow when making "[a]ll determinations" of the prevailing wage. RCW 39.12.015(1). Therefore, the first prong of the *Barry & Barry* test is met.

### C. Adequate Procedures and Safeguards

The parties also disagree as to whether there are adequate procedures and safeguards to prevent against abuse of discretion or arbitrary action. The Court of Appeals held that SSB 5493 lacks procedural safeguards and cited primarily out of state cases as persuasive authority. *AGC*, 19 Wn. App. 2d at 110. The Court of Appeals concluded that because other states' laws have procedural safeguards contained within the statute to govern the use of CBAs and union rates that are absent here, and because SSB 5493 itself does not contain procedural protections or protections against "misuse of CBAs or abuse by private parties," there are not adequate procedural protections. *Id*. at 111. We disagree.

First, to the extent that the Court of Appeals held that the procedural safeguards must be contained in the same statute, we agree with the State that this is not true. Pet'rs Suppl. Br. at 21-22 (quoting *Auto. United Trades Org. v. State*, 183 Wn.2d 842, 861, 357 P.3d 615 (2015) ("separation of powers does not require the safeguards be found in the same statute under challenge—just that the safeguards exist")).

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, the State identifies multiple procedural safeguards in this and other related statutes and rules. For example, under RCW 39.12.060,

> in case any dispute arises as to what are the prevailing rates of wages for work of a similar nature and such dispute cannot be adjusted by the parties in interest, including labor and management representatives, the matter shall be referred for arbitration to the director of the department of labor and industries of the state . . . .

*See also* WAC 296-127-060 (setting forth procedures for the director to arbitrate disputes in more detail); RCW 39.12.050 (civil penalty for filing false statement under the laws of ch. 39.12 RCW).

In addition, the agreements must be CBAs.[7] CBAs inherently involve procedural protections because of the bargaining process and are governed by the NLRA (National Labor Relations Act of 1935). *See generally* 29 U.S.C. §§ 151-169. These procedural safeguards regulating CBAs and the inherent process thus protect against the collusion concerns AGC raises. Additionally, in the case of collusion, the CBA could not be used to set the prevailing wage.

Other states have recognized this in the context of prevailing wage laws. For example, in *Male v. Ernest Renda Contracting Co.*, 122 N.J. Super. 526, 530, 301 A.2d 153, 155-56 (App. Div. 1973), the Superior Court of New Jersey, Appellate Division, examined a statute that defined "prevailing wage" as "the wage rate paid

---

[7] The State argues this in reference to the standards and guidelines. *See* Pet'rs' Suppl. Br. at 14-21. While we agree it is relevant to the standards, we also find it relevant to the procedural safeguards.

*Associated General Contractors et al. v. State et al.,* No. 100258-1

by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done." In finding the statute constitutional, the court did note that the commissioner was only determining "a set of facts" and that collusion within the CBAs was unlikely because it was "highly improbable that these competing groups representing opposing economic interests would conspire together or collaborate to subvert the interest of the public in work performed on public construction." *Id*. at 534-35; *see also W. Ottawa*, 107 Mich. App. at 246 ("The crucial inquiry is whether the collective bargaining process is sufficiently independent of and unrelated to the prevailing wage statute to protect the public against collusive action which could result in an arbitrarily inflated wage rate for public contracts. We conclude that it is."); *Constr. Indus. of Mass. v. Comm'r of Labor & Indus.*, 406 Mass. 162, 173, 546 N.E.2d 367 (1989) (recognizing that CBA negotiations inherently involve some procedural protections because of the competing interests involved and "will likely ensure that a fair and reasonable wage rate results").

Accordingly, the real dispute appears to be that the safeguards present are not the specific safeguards that AGC would prefer. However, this does not mean that the current procedures are not *adequate.* The Court of Appeals concludes, and AGC argues here, that "there are no specified grounds under which the appeals process

21

*Associated General Contractors et al. v. State et al.,* No. 100258-1

would facilitate a change in the prevailing wage rate." *AGC*, 19 Wn. App. 2d at 111; Suppl. Br. of Resp't's at 31. The core issue here seems to be that a wage rate that a party is not satisfied with could still be the prevailing wage. However, the legislature has already decided which rate will prevail: the highest wage rate found in a CBA. There is no need for a process to "facilitate a change in the prevailing wage rate" so long as the prevailing wage is the highest, valid CBA rate. This is a disagreement with the legislative policy and not a lack of procedural safeguards. "It is not the province of this court to second-guess the wisdom of the Legislature's policy judgment so long as the Legislature does not offend constitutional precepts." *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 976 n.12, 977 P.2d 554 (1999).

Accordingly, we find the procedures and safeguards found within our statutes and those governing CBAs to be adequate protection in this case. We hold that the second prong of the *Barry & Barry* test is met. Therefore, we hold that SSB 5493 is not an unconstitutional delegation of legislative authority.

CONCLUSION

We reverse the Court of Appeals and hold that SSB 5493 does not violate the nondelegation doctrine. Accordingly, we remand to the Court of Appeals for consideration of the issue not reached because of its disposition of the case.

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Whitener, J.

WE CONCUR.

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Mann, J.P.T.

23